IMPERIAL CAR RENTAL CORP. *vs.* LAURE B. LUSSIER, *Registrar.*

BROADWAY AUTO SALES, INC., *et al. vs.* LAURE B. LUSSIER, *Registrar.*

DUNNE LEASES CARS AND TRUCKS, INC. *vs.* LAURE B. LUSSIER, *Registrar.*

EASTERN LEASING CORPORATION *vs.* LAURE B. LUSSIER, *Registrar.*

HURD & GOLDBERG, INC., *et al. vs.* LAURE B. LUSSIER, *Registrar.*

JANUARY 13, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

ROBERTS, J.   These are five petitions, in each of which an appeal is taken from an order of the registrar of motor vehicles requiring that each petitioner pay fees for the registration of certain motor vehicles owned by it and used for hire in compliance with the provisions of G. L. 1956, §31-6-1 (E). These petitions were brought in the superior court pursuant to the provisions of G. L. 1956, §31-2-19, wherein it is provided specifically that they follow the course of equity.   After a hearing thereon a justice of the superior court denied and dismissed each petition, and from that order each petitioner has appealed to this court.

In prior litigation these petitioners contested a ruling of the registrar that the motor vehicles under consideration were motor vehicles for hire within the purview of said §31-6-1 (E), and in *Broadway Auto Sales, Inc.* v. *Asselin*, 93 R. I. 403, 176 A.2d 714, this court held that such vehicles were motor vehicles for hire within the purview of that statute.   In the instant litigation they challenge the constitutionality of the statute for the reason that it provides that the registration fees of motor vehicles for hire shall be charged at double the rate of fees charged for such vehicles when not used for hire but by way of an exception contained therein relieves the citizens of the town of New Shoreham from the payment of such double registration fees.   Section 31-6-1 (E) reads as follows: "For the registration of every motor vehicle for hire, double the above rates.   Except that any citizen of the town of New Shoreham shall not be required to pay the double rate specifically provided for in this section; provided, however, that the motor vehicle so used by such citizen of New Shoreham shall be properly registered in accordance with chapters 3 to 9, inclusive, of this title."

The decision of the trial justice discloses that he denied

and dismissed these petitions on the basis of his conclusion that the statute provides for no exception to its requirement that vehicles for hire pay the double registration fee provided for in the act and that, therefore, it makes no classification that could by reason of discrimination be found to violate the equal protection clause of the fourteenth amendment. In doing this he took the view that the word "citizens" could not be equated with the words "residents" or "inhabitants" without doing violence to the rules of statutory construction. The petitioners contend that the trial justice erred in construing the word "citizen" as not including an "inhabitant" or "resident" of the town of New Shoreham. With this contention we agree, conceding that while ordinarily words used in statutory enactments are to be given their customary meaning, when it appears from the context in which such words are used that the legislature intended a different meaning than that ordinarily given such words, the court must comply with that legislative intent. *Tillinghast* v. *Reed,* 70 R. I. 259, 262.

The trial justice in the instant case reads the word "citizen" in its technical or political connotation and by so doing, in our opinion, thwarts the legislative intent to provide for an exception in favor of persons operating cars for hire in the town of New Shoreham. The legislature may employ technical language in circumstances that clearly indicate an intention to use it in other than the technical sense. As was aptly stated in *Kuehne* v. *Town Council,* 136 Conn. 452, 456, " 'The reason and purpose of the legislation as shown by its provisions may well be more significant than technical definitions in determining the meaning of the particular words employed.' "

It is our opinion that the legislature in enacting the instant statute did not intend that the word "citizen" be given its political connotation. Rather, the term was used to circumscribe the class of persons eligible for the benefit con-

templated in the exception. The statutory provision excepting any citizen of New Shoreham from the requirement of paying double the registration fee appears to have been enacted first as an addition to G. L. 1923, chap. 98, in P. L. 1931, chap. 1715. As it was then enacted it read in pertinent part: "Any citizen of the town of New Shoreham using a motor vehicle within said town for the purpose of transporting persons for hire shall not be required to pay the double rate * * * ." The statute was clearly designed to encourage the development of public transportation in the town of New Shoreham, popularly known as Block Island, by relieving those engaging therein from the double fee, and we are strengthened in this conclusion by a recognition of the insularity of the town and of its economic dependence in substantial measure upon the development of its recreational potential during the summer months.

When we read the statute in the light of this purpose, we are persuaded that the term "citizen" was intended to limit the class of persons to whom the statute would have application, that is, to those inhabitants of the town who demonstrated the permanence of their residency in that town by customarily exercising the privileges of citizenship therein. Such a test obviously would have the effect of excluding from the purview of the exception itinerant entrepreneurs who would impair the development of this form of public transportation in that town by engaging therein only during the summer months. In short, we are of the opinion that the exception was intended to encourage the development of public transportation in the isolated township by those of its inhabitants who resided there permanently and that the use of the term "citizen" contemplated only a test upon which such eligibility could be determined.

When this provision was enacted as part of the motor vehicle code, so called, P. L. 1950, chap. 2595, omitted therefrom was the phrase "using a motor vehicle within said

town for the purpose of transporting persons for hire." It must be conceded that this omission tended to obscure the legislative intent to relieve any resident of the town of New Shoreham operating a motor vehicle for hire therein from the requirement of paying the double fee. However, an obscuration of legislative intent does not necessarily operate to alter or abandon the intent unless that result was clearly intended. We are unable to perceive that in reenacting the exception in its present form the legislature intended to repeal the exception affording those operating such vehicles in the town of New Shoreham the pertinent relief by the devious process of making it inapplicable to anyone. We will not impute to the legislature an intention to thus indulge in absurdity. *Radick* v. *Zoning Board of Review*, 84 R. I. 472.

Agreeing with petitioners' contention that the statute does except the inhabitants of the town of New Shoreham who use motor vehicles within that town for hire from compliance with its requirement that the registrants of motor vehicles used for hire pay a double registration, we turn to a consideration of their further contention that the exception is so discriminatory in nature as to deprive them of the equal protection of the laws guaranteed in the fourteenth amendment to the constitution of the United States. The petitioners concede that state legislatures may in their enactments indulge in classifications that in some measure discriminate without violating the inhibition of the equal protection clause but argue that in the instant statutory enactment the exception is without basis in reason and discriminates arbitrarily against them.

The extent to which the equal protection clause inhibits arbitrary discrimination in legislative enactments has been discussed frequently by the Supreme Court, most recently perhaps in *McGowan* v. *Maryland*, 366 U. S. 420, wherein that court said at page 425: "The standards under which

this proposition is to be evaluated have been set forth many times by this Court. Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." The petitioners have the burden then to establish clearly that the exception here under challenge is unreasonable and arbitrarily discriminatory. "It is a salutary principle of judicial decision, long emphasized and followed by this Court, that the burden of establishing the unconstitutionality of a statute rests on him who assails it, and that courts may not declare a legislative discrimination invalid unless, viewed in the light of facts made known or generally assumed, it is of such a character as to preclude the assumption that the classification rests upon some rational basis within the knowledge and experience of the legislators." *Metropolitan Casualty Ins. Co.* v. *Brownell,* 294 U. S. 580, 584.

Confronted with this burden petitioners argue, first, that the provision of the statute requiring payment of double registration fees for vehicles used for hire imposes a tax for the production of revenue and that an exemption of the people of a particular town therefrom is arbitrary per se. Whether the motor vehicle registration fees are taxes or regulatory fees is a question this court has not yet been required to decide. That such fees, if viewed as a tax, would be use taxes and not property taxes seems clear. See *Ingels* v. *Boteler,* 100 F.2d 915, 919. The petitioners' contention, in our opinion, misconceives the purpose of the statute,

which is to impose a double fee upon those vehicles which are intended to be used in the conduct of a private business for profit upon the public highways by furnishing the public with transportation. Such activities have a direct effect upon the overriding public interest in the maintenance of adequate facilities for public transportation, and it does not appear from anything contained in the instant record that the imposition of the double fee and the exception therefrom of the citizens of New Shoreham has any purpose other than to promote that overriding public interest.

We make this point because, in our opinion, the circumstances are such that this court would not be justified in applying tests relevant to the requirement for equal protection in some indirect or strained manner. In our opinion situations of this kind were not within the contemplation of the court when in *Morey* v. *Doud*, 354 U. S. 457, it said at page 464: " 'Discriminations of an unusual character especially suggest careful consideration to determine whether they are obnoxious to the constitutional provision.' " In other words, we do not perceive that the subject matter of this enactment and the exception therein made in any manner preclude testing it for consistency with the constitutional requirement for equal protection by applying thereto the principles laid down in *McGowan* v. *Maryland, supra.*

The petitioners contend also that the statute discriminates arbitrarily against them in that the exception has the effect of creating a "closed class" of the type that was condemned in *Morey* v. *Doud, supra.* This is to argue, as we understand it, that legislative classification which results in the creation of a "closed class," if not violative of the equal protection clause ipso facto, is at least prima facie void as violative thereof. This argument, in the first place, appears to verge on the undesirable practice of adjudication by epithet, but, more important, it obscures the true test, that legislation resulting in the creation of the "closed

class," so called, violates the equal protection clause of the constitution only when, like any other classification, it is palpably arbitrary or bears no reasonable relationship to the purpose of the legislation in which it is contained.

In *Morey* v. *Doud, supra,* the legislature provided for the supervision, licensing, and bonding of community currency exchanges in order to protect the public against the evils that could result from the unregulated and uncontrolled operation of such businesses. The American Express Company was specifically excepted from the requirements of the act. The majority of the court noted that the exception created a "closed class" and conferred an economic advantage upon that class as against others in the same business, and, that the purpose of the act was to provide the public with continuing protection, a purpose to which the discrimination in favor of the American Express Company did not conform. The majority on these grounds held the statute, by reason of the exception contained therein, violated the equal protection clause.

The view thus taken by the majority in that case was subject to vigorous dissent. Mr. Justice Frankfurter, joined by Mr. Justice Harlan, stated in dissent their view that classification is inherent in the legislative process and is not inhibited by the equal protection clause where it is reasonably designed to correct the evil contemplated by the legislature in its enactment. In a separate dissent Mr. Justice Black stated his objection "to the use of general provisions of the Constitution to restrict narrowly state power over state domestic economic affairs," *Morey* v. *Doud, supra,* at page 471, and went on to disclose his view that where the discrimination affected civil rights, a much more rigorous application of the equal protection clause should be made.

While the instant legislation may superficially resemble the legislation passed upon in *Morey* v. *Doud,* it is our opin-

ion that it cannot be reasonably viewed as having the effect that was held by the majority of the court in that case to invalidate the legislation. First, if the instant legislation results in a "closed class," the class so created is given no economic advantage over others who engage in the operation of motor vehicles for hire, it being clear that the members of the class resulting from the exception could not compete with the others because of the total insularity of the area to which the provisions of the exception have application. Second, the purpose of the instant legislation is to provide for the regulation of the business of transporting persons for hire by motor vehicle to the end that the development of adequate public transportation through such means may be encouraged and developed and promoted. Clearly, the exemption of the inhabitants of the town of New Shoreham who so engage in this business will encourage and promote the development of that type of public transportation in the town so that the discrimination in favor of the inhabitants of that town bears a reasonable relationship to the purpose of the legislation.

In our opinion it is significant that the instant statute would operate adversely only upon persons not residents of the town of New Shoreham who sought to engage in the business of transporting the public for hire in motor vehicles within that town. In such a circumstance it is clear that the differential in the registration fees required to be paid would constitute discrimination. However, the arbitrary character of this discrimination, if any, would be more apparent than real, there being no ground for a reasonable inference that nonresidents of that town would engage in such business therein other than during the summer months. To permit nonresidents to carry on this business on a temporary basis through the equalization of the registration fees could only serve to defeat the development of adequate public transportation of this kind within that town by encouraging ruinous competition. In brief, the discrimination

which could result from an application of the exception with respect to the latter class of persons would not, in our opinion, be violative of the equal protection clause. "That a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction, or difference in state policy." *Allied Stores of Ohio, Inc.* v. *Bowers,* 358 U. S. 522, 528. We are of the opinion that the instant statute discriminates only upon the basis of a reasonable distinction and relates to the purpose for which the legislation was enacted and therefore is not void by reason of repugnance to the equal protection clause. Because we take this view, it will not be necessary to consider the further contentions of the petitioners.

The petitioners' appeals are denied and dismissed, the orders appealed from are affirmed, and each cause is remanded to the superior court for further proceedings.

*Arcaro, Belilove & Kolodney, Abraham Belilove, DeSimone & DeSimone, Herbert DeSimone, Israel Press, Waldman & Waldman, Morris Waldman,* for petitioners.

*J. Joseph Nugent,* Attorney General, *Joseph L. Breen,* Chief Special Counsel, for respondent.