314 A.2d 155.

MERLINO ENTERPRISES, INC. *vs.* LOUIS FENLON *et al., individually and in their capacity as members of the Town Council of the Town of Charlestown, Rhode Island.*

JANUARY 30, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

654

PAOLINO, J. This is a petition for certiorari to review the action of the defendant town council denying the plaintiff's application for a license to operate a mobile home park. On September 15, 1972, we directed the defendant to revise its decision by pointing out the evidence on which it based its denial of the plaintiff's application. *See Merlino Enterprises, Inc.* v. *Fenlon,* 110 R. I. 923, 294 A.2d 847 (1972). After the defendant filed a revised decision, we granted the writ. *Merlino Enterprises, Inc.* v. *Fenlon,* 110 R. I. 940, 295 A.2d 431 (1972).

The record certified to this court by defendant reveals the following pertinent facts. On March 6, 1972, plaintiff submitted an application to defendant for a license to operate a mobile home park on Route 216, in the town of Charlestown, pursuant to the provisions of ch. LVII, en-

titled "An Ordinance Regulating and Licensing the Placing and Using of Tents, Trailer Coaches, Tenting Spaces, Trailer Coach Spaces and Trailer Coach Parks." The matter was advertised for public hearing before defendant council on April 10, 1972. After the hearing, at which objectors as well as proponents were heard, the council denied the application in a brief decision, which, as stated above, was subsequently revised at our direction.

The first question raised by plaintiff involves the validity of ch. LVII, the Charlestown mobile home park licensing ordinance. It claims that this ordinance is for all practical purposes a zoning ordinance or a zoning ordinance in disguise and is invalid because it has not been enacted in accordance with the provisions of G. L. 1956 (1970 Re-enactment), ch. 24 of title 45, the state enabling act which empowers municipalities in this state to enact zoning ordinances.

There are at least two reasons why this argument fails. First, the ordinance under which plaintiff sought relief it wanted is not a zoning ordinance. Indeed it is undisputed that Charlestown has no zoning ordinance. Chapter LVII is a licensing ordinance which was enacted pursuant to P. L. 1956, ch. 3810, a special act authorizing and empowering the town of Charlestown to enact ordinances regulating and licensing the placing and using of tents, trailer coaches, tenting spaces, trailer coach spaces and trailer coach parks.

Secondly, even if the ordinance in question were a zoning ordinance, plaintiff would gain nothing thereby for the reason that an applicant cannot attack the validity of a zoning ordinance on which he relied in filing his application for relief under such ordinance. *Madden* v. *Zoning Board of Review*, 89 R. I. 131, 151 A.2d 681 (1959).

For the same reason plaintiff is precluded from attacking the ordinance on the ground that the ordinance is un-

reasonable because it vests the council with complete discretion without prescribing proper standards to guide the council. Section 2[1] of the ordinance vests the town council with power to deny a license in the exercise of its discretion if it finds that certain standards set forth in sec. 6[2] thereof are not met. We point this out merely to show that the situation here is distinguishable from that in *Regnier* v. *City Council*, 91 R. I. 387, 162 A.2d 804 (1960). In the case at bar plaintiff filed an application requesting the town council, in the exercise of the discretion vested in it, to grant the relief sought. This was not the situation in *Regnier*. There we pointed out at 389, 162 A.2d at 806, that the petitioner was not seeking to invoke the discretion of the council in order to procure an exception or variance from the zoning restrictions, but rather he was

---

[1]Section 2 reads as follows:

"The Town Council of the Town of Charlestown may, on written application signed by the applicant, grant a permit or license to any person, firm or corporation permitting the placing or using of any tent, trailer coach, tenting space, trailer coach space or trailer coach park in the Town of Charlestown in accordance with the regulations hereinafter set forth in this ordinance."

[2]Section 6 reads as follows:

"After receiving an application for a license to use or operate any tent, trailer coach, tenting space, trailer coach space or trailer coach park, the Town Council shall order the same advertised for a Public Hearing by inserting a notice of the same in one issue of some newspaper of general circulation published either in the Town of Westerly or the Town of Charlestown in the County of Washington at least six (6) days before the time of such Public Hearing, at which Public Hearing consideration shall be given to objections by property owners in the vicinity of the land to which the application applies and the facts surrounding the location of the said proposed licensed premises as to whether or not the same is found to be compatible with the character and land use of the surrounding neighborhood. And every such application shall be denied if in the discretion of the Town Council of the Town of Charlestown the approval of such application would not be in the best interests of the use of the land for which the application is made or the neighboring land or the community of the Town of Charlestown as a whole."

before it claiming as a matter of right under the zoning law the permit to utilize his land in a lawful manner. For the reasons stated, plaintiff's claim that the licensing ordinance is invalid is not properly before us.

This brings us to the question of the propriety of the council's action in denying plaintiff's application. The plaintiff contends in substance that it has complied with all the requirements of the ordinance; that the council's decision has no factual basis to sustain it and is not supported by any legally competent evidence; that the council's action was arbitrary and capricious; and that in the circumstances the council's action was tantamount to a confiscation of property resulting in depriving plaintiff of its property without due process of law in violation of our federal and state constitutions.

The plaintiff's contentions are not supported by the record. On the contrary, the record supports the findings of the council on which the denial of the application is based, and therefore plaintiff's claim of constitutional infringement is without merit.

Before discussing the question of whether the council abused its discretion it may be helpful to refer to *Fink* v. *Bureau of Licenses*, 90 R. I. 408, 158 A.2d 820 (1960), where, in discussing the problem of the granting or denial of a license we said:

> "The granting or denial of a license is a function that is administrative in its nature and is discretionary with licensing boards or officers. This court has no control over the lawful exercise of that power. *Phillips* v. *McLaughlin*, 82 R. I. 224, 227. We will, however, intervene by certiorari for the purpose of determining whether such boards or officers have exceeded their jurisdiction. In reviewing the action of a licensing authority on the question of whether it has exceeded its jurisdiction, we will examine the evidence, not to weigh it or to pass upon its credibility but only to ascertain whether there is any legal evi-

dence to support the ruling. *Elmwood Tap, Inc.* v. *Daneker,* 78 R. I. 408." *Id.* at 414, 158 A.2d at 823.

With the rule as stated above to guide us we proceed to consider the question of whether there has been an abuse of discretion here. Section 6 of the ordinance prescribes the guidelines which governed the council in passing on plaintiff's application. See note 2 *supra.*

The council's decision contains express findings of fact on which it based its denial of plaintiff's application. We refer only to the following findings which, we believe, are supported by the facts brought out at the council meeting:

1. "* * * the site of the proposed mobile home park is not compatible with the character and land use of the surrounding area * * *

2. "[T]he approval of such application would not be in the best interest of the use of the land for which said application is made or the neighboring land. This finding of fact is based partly on the geography of the Town of Charlestown which the Town Council is thoroughly familiar with and takes notice of * * *

3. "Most of the area in the vicinity of the proposed mobile home park is now populated by single family dwelling homes on large tracts of land by people who enjoy the rural atmosphere; and in the opinion of this Town Council a mobile home park in this vicinity would create a disruptive force which would change the pattern of growth.

4. "The Comprehensive Community Plan for the Town of Charlestown, which is currently being considered for approval, does not establish this area for use as a mobile home park but delineates it as a rural residential area with medium density — one acre lots.

5. "Land of the proposed mobile home park has a land declivity which reaches from Ross Hill Road to Perry Healey Brook and which is a very prolific brook and which has some of the finest trout in

the area. This Town Council is concerned for the maintenance of ecological balance of the area. This brook runs into Watchaug Pond.

6. "The present road which services this area from the main highway—route 1—to Bradford, is only a secondary road with minimum width; and this Town Council is concerned that an additional concentration of traffic would create a dangerous hazard for the present users of the Ross Hill Road.

7. "Abutting proposed mobile home park is a sportsmen's club which would be rendered useless for skeet shooting and the training of the use of weapons. This is an important facility in the Town and would be a great loss.
* * *

8. "* * * the granting of said application for said mobile home park is not in the best interests of the community of the Town of Charlestown as a whole.
* * *

9. "The Town Council is concerned that the Town would not have the ability to adequately police this additional development without adding a tax burden on the residents of the Town and also placing an additional burden on the volunteer fire departments which would service the area."

Then, after noting that 27 persons who were landowners in the town spoke against the proposed mobile home park, the council said:

"From the evidence of these objectors taken together with the knowledge which the Town Council has of its own town's geography, general locations, etc., the Town Council is of the opinion that this proposed mobile home park would be likely to depreciate the property of neighboring residents, disrupt natural resources and create a condition which could not be corrected or reversed."

The council emphasized that in making its decision it took into consideration matters of common knowledge and of record as well as the geography of the town.

Under the express language of sec. 6 the council was duty bound to consider the objections by property owners in the vicinity of the subject land and the facts surrounding the location of the proposed mobile park in determining whether or not it would be compatible with the character and land use of the surrounding neighborhood. The council did exactly this and found that the approval of plaintiff's application would not be in the best interest of the neighboring land or the community of the town as a whole. Under the ordinance the council had the authority to rely on its own special knowledge of the town and its geography just as it could rely on the facts presented by the objectors. The findings with respect to (1) the compatibility of the proposed use with neighboring land, (2) the adverse effect on neighboring property values, and (3) the dangerous hazard caused by an additional concentration of traffic, are supported by this record. In the circumstances we cannot say that the council acted arbitrarily or abused its discretion in denying the application.

We consider next plaintiff's contention that the council based its decision in part on ecological factors, that this is a field preempted by the state, and that therefore the council acted beyond the scope of its authority. The plaintiff argues that the council has no authority to determine whether or not public health and sanitary conditions meet the requirements of law since this is a matter which is within the jurisdiction of the state department of public health.

The council did not base its decision on any lack of private sewerage facilities. In describing the land on which the proposed use was to be located, it pointed out that the land had a declivity which leached from the road to a certain brook which ran into a certain pond. After noting that the brook was very prolific and had some of the finest trout in the area, the council merely said that

it was "concerned for the maintenance of ecological balance of the area." This is far from indicating that it was basing its decision, even in part, on ecological factors.

The reference to "ecological balance" is not necessary to sustain the decision and may therefore be considered as mere surplusage. The decision is supported by other express findings which we have discussed earlier. On the view we take we need not consider the question of whether the council has a right to consider health and sanitary problems under the state enabling act and the local ordinance or whether the state has pre-empted this area.

In his final argument plaintiff again challenges the validity of the Charlestown ordinance. As we said above, since the plaintiff sought relief under the local ordinance, he cannot, after an adverse decision, attack its validity.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the papers certified are ordered returned to the defendant town council with our decision endorsed thereon.

KELLEHER, J., concurring. This concurrence is prompted by some of the observations made by the objectors at the hearing before the town council as well as certain statements made during oral argument by Charlestown's distinguished and most capable solicitor.

Merlino's petition concerned a 68-acre tract situated on the easterly side of Ross Hill Road (Route 216). A mobile home park was to be located on the 20 acres of the tract that was closest to the road. A 45-foot wide buffer strip composed of trees, shrubs and other flora that abound in this area would surround the park. The petitioner stressed its desire to create a "retirement village" with each home being subject to a year's lease.

Some objectors spoke of drainage problems, or the potential fiscal impact on the municipality's budget attributable

to a possible increase in the town's school population, all of which would be compounded by the minuscule amount of revenue realized from any tax assessed against the mobile homes. One objector, who lived about three and one-half miles from the Ross Hill Road site, complained that the complex of 50 mobile homes would take work away from the town's craftsmen who could build 50 homes. The solicitor, who was understandably caught up in the emotional heat of his argument, commended the council for its designating an area for mobile parks which guaranteed that the "gypsies" would be kept "away from the shore." These sentiments completely overlook what has gone on in the mobile home industry and what other states or municipalities have done in this area of governmental concern.

Within the past year, this court noted that a combination of "tight money," "galloping costs," and "labor shortages" have caused a drying up of new single-family dwellings in the low to middle price range and consequent increase in the use of mobile homes. *Town of Glocester* v. *Olivo's Mobile Home Court, Inc.,* 111 R. I. 120, 300 A.2d 465 (1973). We also observed that "* * * a mobile home park can no longer be primarily classified as a gathering place for a group of nomads who wander hither, thither and yon over the highways and byways." Furthermore, the state, through its Department of Health, has assumed the paramount obligation of insuring that the public health is not imperiled by the presence of a mobile home park in any area of this state's 39 municipalities. General Laws 1956 (1968 Reenactment) ch. 21 of title 23. If a park operator cannot satisfy the department's regulations as they relate to drinking water, sewage disposal, the seepage qualities of the soil, and other items of sanitary significance, he cannot commence business even though he may hold a municipal license.

No one could dispute the principle that owners of mobile homes should pay their fair share of the cost of the municipal services which they enjoy. The problem is in deciding how such share can be determined and its payment enforced.

There are two mobile home parks presently operating in Charlestown. I would respectfully suggest to citizens of Charlestown who view mobile homes as a drain on the town's till that they seek out the services of their state legislators. New York has by statute classified mobile homes as real property. Pennsylvania has attempted to meet the problem by permitting the taxing of mobile homes that are permanently attached to the land; other jurisdictions by a personal property tax on these vehicles. *See* Annot., *Taxation as real estate, of trailers or mobile homes*, 86 A.L.R.2d 277 (1962).

Another solution in this area has been the imposition of a license or franchise tax on mobile home parks or collecting an occupancy tax on a daily, weekly or monthly basis. Since Rhode Island has no special statute relating to the collection of revenue from mobile home park residents to cover the benefits conferred on them, an informative discussion of the various methods utilized elsewhere can be found in the following: Barke & Gage, *Mobile Homes: Zoning & Taxation*, 55 Cornell L. Rev. 491, 519-526 (1970); Comment, *The Search For An Equitable Approach To Mobile Home Taxation*, 21 De Paul L. Rev. 1008 (1972); Note, *Toward An Equitable And Workable Program of Mobile Home Taxation*, 71 Yale L. J. 702 (1962); *see also, Nelson Cooney & Son, Inc.* v. *Township of South Harrison*, 57 N. J. 384, 273 A.2d 33 (1971); *New York Mobile Homes Ass'n* v. *Steckel*, 9 N.Y.2d 533, 215 N.Y.S.2d 487, 175 N.E. 2d 151 (1961); *Barnes* v. *City of West Allis*, 275 Wis. 31, 81 N.W.2d 75 (1957).

Finally, Charlestown's mobile home ordinance is similar to Glocester's ordinance and unquestionably can be classified as a quasi-zoning regulation. *Town of Scituate* v. *O'Rourke,* 103 R. I. 499, 239 A.2d 176 (1968). The licensing ordinance speaks of site preparation, minimum lot size for each mobile home space, the requisite clearance between each vehicle, and setbacks from streets within the park and also the public highway. By its terms, the council is authorized to and in fact did delineate an area within which a mobile home park could be situated. We must assume that when the council designated Ross Hill Road as the mobile home park area, it was well aware of the number of units that could be served at locations such as that described in the Merlino petition. The road, the brook and the skeet-shooting club were all operative on August 9, 1965, the day the council adopted ch. LVII. However, in certiorari we must take the ordinance as we find it and there is competent evidence that supports the action of the town council.

*John F. Lallo,* for plaintiff-petitioner.

*James O. Watts,* for defendants-respondents.