

# The Attorney General of Texas

October 30, 1980

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Dan M. Boulware
Johnson County Attorney
Courthouse
Cleburne, Texas 75031

Opinion No. MW-262

Re: Appointment of a city marshal

Dear Mr. Boulware:

In April, 1979, the city of Briaroaks, a general law city, elected a city marshal. He resigned, and the mayor and city council appointed a replacement, who also resigned. A third person was appointed; however, the council removed that appointee following a dispute between him and several council members. The mayor, who felt this removal was unwarranted, then designated this person a special police officer under article 995, V.T.C.S., and placed him in charge of enforcing the city's laws. The city council has challenged this procedure.

You ask the following questions:

1. Was the mayor authorized to reappoint this individual under article 995 and, if so, how long may he serve as a special police officer?

2. Although this individual has been reappointed under article 995 as a special police officer, does a vacancy exist in the office of city marshal and, if so, how is this vacancy to be filled?

3. The individual is not a resident of the city, but he does reside in the county. May he serve as either city marshal or special police officer?

4. The individual does not have law enforcement certification. May he serve as the city's sole peace officer either under article 995 or as city marshal?

Article 995, V.T.C.S., provides, in pertinent part:

> Whenever the mayor deems it necessary, in order to protect the laws of the city, or to avert danger, or to protect life or property, in case of riot or any

> outbreak or calamity or public disturbance, or when he has reason to fear any serious violation of law or order, or any outbreak or any other danger to said city, or the inhabitants thereof, he shall summon into service a special police force, all or as many of the citizens as in his judgment may be necessary.

Article 977, V.T.C.S., provides that "[o]ther officers of the [city] shall be a. . . marshal. . . who may either be appointed or elected as provided by ordinance." Article 999, V.T.C.S., provides that the city marshal is the ex officio chief of police, and that he is responsible, inter alia, for preventing disturbances, arresting violators of the public peace, and executing all writs and process issued by designated courts. In light of these provisions, a city marshal is clearly an officer of the city. See Uhr v. Lancaster, 187 S.W. 379 (Tex. Civ. App. - San Antonio 1916, no writ); Miller v. City of Alamo Heights, 282 S.W. 2d 264 (Tex. Civ. App. - San Antonio 1955, writ ref'd n.r.e.) (articles 977 and 999, V.T.C.S., to be construed together).

Article 1003, V.T.C.S., prohibits a city council from appointing anyone "other than an elector resident of the city" to any office except that of city health officer. See Attorney General Opinion O-181 (1939). Article 1006, V.T.C.S., authorizes the council to remove officers for incompetency, corruption, misconduct, or malfeasance in office, after due notice and an opportunity to be heard; the council may also remove an officer "by resolution declaratory of its want of confidence in said officer; provided, that two-thirds of the aldermen. . . vote in favor of said resolution." When a vacancy in an office occurs, by either resignation, article 1005, V.T.C.S., or removal from office, article 1006, V.T.C.S., "the mayor or acting mayor shall fill such vacancy by appointment, to be confirmed by the city council," article 989, V.T.C.S.

We will answer your last question first. Article 4413(29aa), V.T.C.S., creates the Commission on Law Enforcement Officer Standards and Education and empowers it, among other things, to certify those persons designated as "peace officers" by article 2.12, Code of Criminal Procedure. Unless individuals accepting appointment as peace officers within the meaning of the act are so certified, they commit a crime — as do those appointing them — with certain exceptions. See Attorney General Opinion H-1286 (1978); see also Attorney General Opinions MW-111 (1979); M-767 (1971). Persons drafted as part of a special police force pursuant to article 995 are not "peace officers" within the meaning of the act and need not be certified pursuant to article 4413(29aa). Attorney General Opinion H-1286, supra. On the other hand, a city marshal is a peace officer designated by article 2.12 of the Code of Criminal Procedure. See also article 999b, V.T.C.S. ("law enforcement officer" includes the city marshal). In order to serve lawfully as city marshal, therefore, an individual must be certified as qualified to be a peace officer. Because the individual in question is not so certified, he is not legally qualified to serve as city marshal.

Based upon the information you have supplied, we have some doubt as to whether this individual was properly removed from office under article 1006, V.T.C.S. We need not address this issue, however, since we have determined that he was ineligible to serve as city marshal in the first place. Thus, the answer to your second question is

that the office of city marshal has been technically vacant since the second officeholder resigned, whether or not it was afterward filled by a de facto officer. See Irwin v. State, 177 S.W. 2d 970 (Tex. Crim. App. 1944). Cf. Jackson v. Maypearl Independent School District, 392 S.W. 2d 892 (Tex. Civ. App. - Waco 1965, no writ). Pursuant to article 989, V.T.C.S., that vacancy may now be filled by the mayor, subject to confirmation by the city council.

Your third question is whether this individual, who does not reside in the city of Briaroaks, may serve as city marshal or as a special police officer under article 995, V.T.C.S. We have stated that he is ineligible to serve as city marshal because he is not certified as qualified to be a peace officer. In our view, he is also ineligible because he does not reside in the city. V.T.C.S. art. 1003. See Attorney General Opinion O-181 (1939); 56 Am. Jur. 2d Municipal Corporations §247, at 305.

Article 995, V.T.C.S., provides that the mayor of a city may "summon into service. .. all or as many of [its] citizens as in his judgment may be necessary" to accomplish the objectives set forth in that statute. (Emphasis added). Notwithstanding other requirements, an individual must at least be a resident of a political community in order to be a "citizen" of that community. See, e.g., Herriott v. City of Seattle, 500 P. 2d 101 (Wash. 1972), citing U.S. v. Cruikshank, 92 U.S. 542 (1875); Imperial Car Rental Corp. v. Lussier, 196 A. 2d 728 (R.I. 1964); Bergstrom v. Bergstrom, 478 F. Supp. 434 (D.N.D. 1979). Since the individual is not a resident of the city, he is not in our opinion a "citizen" within the meaning of article 995, V.T.C.S.; thus, he is not subject to the provisions of that article.

Your final question is whether, under the circumstances you describe, the mayor was authorized to press this individual into involuntary service as a special police officer in charge of enforcing city laws after he had been removed as city marshal. As we have observed, article 995 authorizes the mayor to conscript a special police force consisting of "all or as many citizens" as he deems necessary for the purposes specified therein.

Article 995 may be relied upon in instances of public emergency or extraordinary need, but we think it is clear that it may not be utilized to circumvent express statutory requirements pertaining to the appointment of city officers. We thus conclude that, even were this individual a "citizen" of Briaroaks within the meaning of article 995, the mayor would have no authority to draft him as a special police officer with duties and responsibilities virtually identical to those of the position from which he had been dismissed. The proper method for filling the vacancy in the office of city marshal is set forth in article 989, V.T.C.S.

## S U M M A R Y

1. The mayor of Briaroaks was not authorized to draft a non-resident individual as a special police officer in charge of enforcing the city's laws after that individual had been removed as a city marshal, an office for which he had not been certified

as qualified by the Commission on Law Enforcement Officer Standards and Education, and which is now vacant.

2.    Following the resignation of the second appointee, a vacancy existed in the office of city marshal. That vacancy has never been properly filled.  Article 989, V.T.C.S., sets forth the proper method for filling the vacancy.

3.    An individual who is not a resident of the city may not serve as city marshal or as a special police officer.

4.    An individual must have peace officer certification to serve as city marshal but need not be so certified to serve as a special police officer under article 995, V.T.C.S.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan Garrison, Acting Chairman
Jon Bible
Jerry Carruth
Rick Gilpin
Bruce Youngblood