NEWPORT AUTO SALVAGE, INC. et al.

v.

TOWN COUNCIL OF the TOWN OF PORTSMOUTH ACTING AS BOARD OF LICENSE COMMISSIONERS et al.

No. 83-38-M.P.

Supreme Court of Rhode Island.

Dec. 13, 1985.

William F. Calise, Paul J. DiMaio, Grilli, DiMaio & Berson, Providence, for petitioner.

Richard S. Humphrey, Tiverton, Donato A. D'Andrea, Newport, for respondent.

OPINION

WEISBERGER, Justice.

This case comes before us on a petition for certiorari filed by Newport Auto Salvage, Inc. (Salvage), and Anthony Russo (Russo) in order to review a decision of the Town Council of the Town of Portsmouth (the council), acting as the Board of License Commissioners for said town, in denying Salvage's application for a license to operate an automobile junkyard on certain premises owned by Salvage and located on West Main Road (also known as Route 114) in the town of Portsmouth. The facts as found by the council in its decision are as follows.

"1. An automobile junkyard, usually and commonly known as Rocha's Auto Parts, has operated at 1416 West Main Road, Portsmouth, Rhode Island, since approximately 1948 or 1949. Said junkyard was continuously operated until February of this year, at which time the then proprietor of the corporation operating the business, Clyde Bertrand, ceased activities at said location.

"2. The present applicants, Anthony Russo and Judith R. Russo, being second mortgage holders, foreclosed upon the

real estate upon which the business is located, and at foreclosure sale, purchased the real estate.

"3. On July 21, 1982, said Russos applied for an auto wrecker's license at the subject location. On the same date, they also requested that the license be issued in the name of Portsmouth Auto Salvage, Inc., a corporation which they wholly own.

"4. The applicants herein had previously operated the business known as Antone Rocha, Inc. for a period from 1976 through 1979, at which time the business and real estate was sold to Clyde Bertrand.

"5. After the sale of the business and premises, the present applicants retained no interest in the business except for the mortgage previously referred to herein.

"6. The Board takes administrative notice that the premises located at 1416 West Main Road is comprised of a lot having approximately 218 feet of frontage on said West Main Road, a maximum depth of 500 feet and a maximum width of 449 feet along its Easterly boundary. The Board further takes administrative notice that West Main Road is a primary road in the sate highway system, being Route 114.

"7. The Board takes administrative notice of the existence of owners of land within 200 feet of the applicants' property as set forth in the Land Evidence Records of the Town of Portsmouth and the Tax Assessor's Land Evidence Records of the Town of Portsmouth and the Tax Assessor's Land Evidence Records. The Board also takes administrative notice of the extent to which property of abutters lies within 200 feet of the petitioners' property, again as determined through the Tax Assessor's records.

"8. At the hearing, a number of abutters lodged their objection either through testimony or through the introduction of a petition and letter indicating objection. The Board finds as a fact that the own-

ers or occupants of the greater part of the land within 200 feet of the petitioners' property have objected to the granting of such license. In making such determination, the Board has considered and included land owned by the United States Government and not subject to the jurisdiction of the Town of Portsmouth located on the Westerly side of said West Main Road.

"9. There was no testimony at the hearing to the effect that the business proposed by petitioners would be operated and maintained entirety [sic] within a building. There was testimony, and the Board so finds, that were this license to be granted, part of the business of the petitioners would include the reselling of parts to be used for the purpose for which they were originally manufactured.

"10. The Board further finds that the entire property of petitioners is located within 600 feet of West Main Road which is a primary highway of the State of Rhode Island."

Relying upon the foregoing findings of fact, the council first determined that Salvage's application should be treated as a new application since Salvage had never previously held an automobile-junkyard license for such premises. As a new application, the council considered that the granting of this license was subject to the provisions of G.L.1956 (1976 Reenactment) § 5–21–2(b), which provides as follows:

"No license shall be granted under this chapter to the keeper of any shop or storehouse for the reception of any junk, old metals, or other secondhand articles or to a person establishing, operating or maintaining an automobile junkyard, in any location not lawfully occupied for such purpose at the time of the application for such license, where the owners or occupants of the greater part of the land within two hundred feet (200') of such building or place shall file with the board, town council, or city council, respectively, having jurisdiction to grant

licenses, their objection to the granting of such license; provided, however, that this sub-paragraph shall not apply to any applicant who is the keeper of such a shop or storehouse, or automobile junkyard, which is being acquired under eminent domain proceedings, who is applying for licensing within § 5–21–1 of the general laws of 1956 as amended, within the same city or town wherein he was formerly licensed."

■ Salvage and Russo challenge the determination by the council that Salvage's application should be treated as a new application as opposed to a renewal application for the license previously held by another corporation, Antone Rocha, Inc. Insofar as this determination was based in part upon the finding of fact that operations at the site had ceased before the new application was filed, such a determination is a finding of fact. Our review of such findings of fact is limited to a determination of whether any legal evidence exists to support the ruling. In making this determination, we do not pass upon the weight or credibility of such evidence. *Merlino Enterprises, Inc. v. Fenlon*, 112 R.I. 653, 314 A.2d 155 (1974); *Fink v. Bureau of Licenses*, 90 R.I. 408, 158 A.2d 820 (1960); *Elmwood Tap, Inc. v. Daneker*, 78 R.I. 408, 82 A.2d 860 (1951). A review of the record in the instant case discloses that there was ample evidence upon which the council could find that Salvage's application was not a renewal but an application for a new license by a completely separate corporate entity. This court has held in *Padula v. Town Council of West Greenwich*, 94 R.I. 196, 199, 179 A.2d 334, 337 (1962), that an application by a purchaser of property of a licensee was appropriately treated as a new application. The rationale expressed in that case was that the previous owner, by virtue of the license, was given a right personal to the licensee that did not automatically pass to the new owner. *Id.* The record is clear that Russo was a principal stockholder of Antone Rocha, Inc., from 1976 to 1979 but thereafter sold the real estate wherein the business was conducted and his stock in the corporation to Clyde Bertrand. Thereafter he retained only a security interest in the real estate and the stock. After foreclosing his security interest, Russo transferred the real estate to Salvage, a newly formed corporation. The two corporations were in every respect separate entities, and there was no requirement that the council treat them any differently from the seller and the purchaser in *Padula, supra.* Moreover, during the hearing, counsel for Salvage repeatedly affirmed that this was a new application.

■ Given the factual determination that Salvage's application should be treated as a new application as opposed to a renewal, the granting of the license was subject to the provisions of § 5–21–2. The council found on the basis of evidence presented to it, together with tax assessor's maps, that the owners or occupants of the greater part of the land within 200 feet of the premises had filed objections to the granting of such license. A portion of this finding is based upon evidence submitted at the hearing as supplemented by official notice of the town's own tax records. As a board of license commissioners, the council was acting partly as a legislative body and partly as an administrative agency exercising a quasi-judicial function. An administrative agency may take official notice of matters of common knowledge and of other matters of which a court might take judicial notice. *See United States v. Pierce Auto Freight Lines, Inc.*, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946). It is a familiar doctrine that in taking judicial notice, a court may rely upon its own records. *Perez v. Pawtucket Redevelopment Agency*, 111 R.I. 327, 302 A.2d 785 (1973); *Morrissey v. Piette*, 96 R.I. 151, 190 A.2d 1 (1963). Certainly, the tax assessor's records that were presented by the town solicitor at the hearing could be considered by the council in determining the ownership of land within 200 feet of the subject premises by those who had objected to the granting of the license.

 Salvage has made some vague references to the unconstitutionality of § 5–21–2 but has cited no cases in support of this proposition. It is a familiar doctrine in this jurisdiction that statutes enacted by the General Assembly are presumed to be constitutional unless the court is persuaded of their unconstitutionality beyond a reasonable doubt. *Chartier Real Estate Co. v. Chafee*, 101 R.I. 544, 225 A.2d 766 (1967); *Opinion to the House of Representatives*, 99 R.I. 377, 208 A.2d 126 (1965); *Imperial Car Rental Corp. v. Lussier*, 97 R.I. 168, 196 A.2d 728 (1964). If a party fails to indicate the authoritative position upon which he relies in challenging a statute as unconstitutional, the burden of persuasion is not satisfied. *See State v. Berker*, 112 R.I. 624, 314 A.2d 11 (1974). This court has applied § 5–21–2(b) on a number of occasions and has implicitly conceded its validity. *See, e.g., Padula v. Town Council of West Greenwich*, 94 R.I. 196, 179 A.2d 334 (1962); *Fink v. Bureau of Licenses*, 90 R.I. 408, 158 A.2d 820 (1960); *Acme Development Co. v. Bureau of Licenses*, 87 R.I. 11, 137 A.2d 422 (1957); *Slefkin v. Board of Aldermen of Central Falls*, 39 R.I. 525, 99 A. 261 (1916). Although we do not suggest that the constitutionality of a statute may not be challenged merely because of its having been recognized by this court for a long period of time, we do suggest that the burden of persuasion of unconstitutionality requires more than a mere assertion thereof.[1]

The council also denied the license on two other grounds. The second ground was the location of the proposed junkyard within a distance of less than 600 feet of a state highway in violation of the provisions of § 5–21–4(c)(2), coupled with the complete absence of any evidence that the junkyard would be operated entirely within a building as allowed by § 5–21–4(a). The council further found that as a new application, these premises were not exempted by the provisions of § 5–21–6 which are applicable only to an existing automobile junkyard.

The third reason for denial of the license was derived from testimony of the objectors at the hearing that the various types of pollution described by abutters as existing under the previous owners as well as the change in character of the land surrounding the proposed junkyard made such a use detrimental to the abutters and to the quality of the lives of persons who reside in the neighborhood.

 Any one of the foregoing bases for denial of the license would, in our opinion, have been sufficient. However, in light of our determination of the first issue and the propriety of the denial of the license pursuant to § 5–21–2(b), it is not necessary to examine in detail the challenges raised by Salvage and Russo to these alternative grounds for decision. Suffice it to say that we are of the opinion that the decision of the council on these grounds was valid. We have examined the arguments of Salvage and Russo in this respect as well as in respect to the first issue and find that they are without merit.

1. Although no citation of authority is given by either party relating to the constitutionality of the statute, we are aware of one case in which the Supreme Court of the United States invalidated a statute that gave veto power over the granting of a liquor license to churches within 500 feet of the location of the proposed establishment. *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 103 S.Ct. 505, 74 L.Ed.2d 297 (1982). However, the Massachusetts statute at issue in that case was held to be violative of the establishment clause of the First Amendment to the Constitution of the United States. The instant case involves no such First Amendment issue. Moreover, an automobile junkyard is of such a noxious nature that the limitation upon the power to grant such a license under circumstances wherein the owners of a majority of land within the prescribed distance object to the granting of the same seems to violate no specific provision of either the State or the Federal Constitution. It must be noted that the owner of the land who applies for an initial license is not deprived of all beneficial use thereof but is only prohibited from a specific use that may well be determined by the Legislature to be of such detrimental quality to abutting landowners that such a license should not be granted over their objection.

For the reasons stated, the petition for certiorari is denied; the writ heretofore issued is quashed. The papers in the case may be remanded to the Town Council of the Town of Portsmouth with our decision endorsed thereon.

BEVILACQUA, C.J., did not participate.