METALS RECYCLING CO., INC.

v.

Louis R. MACCARONE et al.

No. 85-449-M.P.

Supreme Court of Rhode Island.

June 26, 1987.

Michael P. Defanti, Gerald J. Petros, Hinckley, Allen, Tobin & Silverstein, Providence, for plaintiff.

Joseph F. Penza, Richard C. Tallo, David M. Spinella, Sp. Asst. Atty. Gen., Providence, for defendant.

## OPINION

FAY, Chief Judge.

This is a petition for certiorari brought by the petitioner, a scrap-metal salvage company, from the Johnston Town Council's denial of the petitioner's license-renewal application. We reverse.

The petitioner, Metals Recycling Co., Inc., is in the business of shredding metals, primarily from used automobiles, into scrap for resale. In 1979 petitioner acquired a shredder, constructed a building to house the shredder, and commenced its shredding operation. The petitioner has annually applied for and received operating licenses from the town under local ordinances, Johnston Code §§ 5-8 through 5-18, and from the State Board of Wreckers and Salvage Yard Regulation, pursuant to G.L. 1956 (1984 Reenactment) chapter 14.2 of title 42.

In early 1985 the town council received a number of complaints about petitioner's business from its neighbors. In response

the council scheduled a series of meetings with petitioner and imposed several restrictions on the operation of the business, including that (1) a fence be erected around the property, (2) all gasoline tanks from old automobiles be removed prior to their entry onto the property, (3) all trucks entering the premises use a specified approach, and (4) smoke, noise, and rodent-control devices be installed.

Between March and September 1985 petitioner spent approximately $140,000 to bring its operation into conformity with the council's restrictions. It installed a roller device to remove gas tanks as the automobiles entered the yard, erected a fence, installed a dust collector and scrubber on the shredder, paved the scrap-yard area, and bought a used street sweeper to clean the street leading into the yard.

In September 1985 petitioner submitted its annual application for license renewal, and on September 16, 1985, the council conducted a public hearing on the application. At the hearing, Pasquale Izzo [1] testified that he had not violated the conditions of any of his operating permits, that he had spent about $140,000 in improvements to answer his neighbors' complaints, and that relocating the business would cost about $500,000. The neighbors who testified against the license renewal complained about the health hazard, the smoke, the dust, the stench, and the noise emitted by petitioner's operation.

Thereafter, on September 30, 1985, the council voted to deny petitioner the license. Only three of the five council members voted on the license application, a fourth councilor abstained, and the fifth member was not in attendance. Council president,

Benjamin Zanni, within whose district petitioner's business was located, voted to deny the license because he felt that petitioner had violated the town zoning ordinance and that the operation constituted a public nuisance and therefore amounted to an unreasonable use of the property. Councilor Michael Simone, out of political deference to Zanni, voted to deny the license, as did Councilor Louis Maccarone for what he termed petitioner's violation of the "best neighbor policy."

The petitioner raises several grounds for reversal of the council's judgment. We need only reach the question of whether the statutory licensing provision, G.L. 1956 (1976 Reenactment) § 5–21–1, which permits the town council to renew or revoke existing auto-salvage licenses at its pleasure, is an unconstitutional delegation of legislative power.[2]

This court on a number of occasions has examined questions relating to chapter 21 of title 5; no case, however, has directly addressed the question before us today. In *Newport Auto Salvage, Inc. v. Town Council of Portsmouth*, 502 A.2d 339, 343 (R.I. 1985), for example, the petitioner "made some vague references to the unconstitutionality of § 5–21–2 but * * * cited no cases in support of this proposition." Consequently, we refused to rule on the challenge because "the burden of persuasion [to rule on that challenge] requires more than a mere assertion thereof." *Id.*[3]

In *Novak v. City Council of Pawtucket*, 99 R.I. 41, 205 A.2d 589 (1964), the court held that the city council should not have denied a license to operate a second-hand auto dealership without specifying its rea-

---

1. Pasquale Izzo is apparently the owner or principal officer of Metals Recycling Co., Inc.

2. In *Newport Auto Salvage, Inc. v. Town Council of Portsmouth*, 502 A.2d 339, 342 (R.I. 1985), we affirmed the licensing board's determination that the petitioner's license application was not a renewal but rather an application for a new license and that therefore "as a new application * * * the granting of the license was subject to the provisions of § 5–21–2." Because G.L. 1956 (1976 Reenactment) § 5–21–2 governs the granting of new licenses, it does not apply to the instant case. Here petitioner had been lawfully

occupying the premises as an auto-salvage business for a number of years and requested a renewal of its license.

3. We nevertheless went on to state that the legislative scheme of § 5–21–2(b), whereby the owners or occupants of a majority of land within the two-hundred-foot radius could block issuance of a junk-dealer license, appeared to violate no specific provision of either the State or the Federal Constitution. *Newport Auto Salvage, Inc.*, 502 A.2d at 343 n.1; *see also, Goldberg v. Board of Licenses of Providence*, 525 A.2d 1295 (R.I.1987).

sons for doing so. The court specifically noted that it was not concerned with the legislative grant of authority under § 5–21–1 because the issue had not been put in question by the parties. 99 R.I. at 42, 205 A.2d at 591.

Likewise, in *Padula v. Town Council of West Greenwich*, 94 R.I. 196, 179 A.2d 334 (1962), and *Fink v. Bureau of Licenses*, 90 R.I. 408, 158 A.2d 820 (1960), the court upheld denials of licenses without reaching the question of whether §§ 5–21–1 and 5–21–2 unlawfully delegated legislative power. However, merely because this court has recognized and applied a statute over an extended period so as implicitly to concede its validity does not suggest that a constitutionally based challenge to its validity is not in order. *See Newport Auto Salvage, Inc.*, 502 A.2d at 343.

The town council's authority to renew petitioner's license derives from § 5–21–1. Section 5–21–1 reads in pertinent part:

"Local licensing—Fees—Penalty. The town council of any town or city council of any city, is hereby authorized to provide by ordinance for the issuing and revocation at pleasure of licenses to all persons selling, purchasing, bartering, and dealing in junk, old metals, and any other second-hand articles, and to all persons establishing, operating or maintaining automobile junkyards, subject to such conditions and restrictions and for such term not exceeding one (1) year as may be in the like manner prescribed * * *."

Pursuant to this statute, the town of Johnston enacted §§ 5–8 through 5–18,[4] § 5–9 of which states:

"Sec. 5–9. Same—Authority of town council to issue, etc.

The town council may issue and revoke, at pleasure, licenses to all persons selling, purchasing, bartering and dealing in junk, old metals, and any other secondhand articles, and to all persons establishing, operating or maintaining automobile junk yards, for a term of not exceeding one year, and may impose such conditions and restrictions upon the license as the town council may deem necessary."

The petitioner argues that the enabling legislation, § 5–21–1, which permits towns to license auto-salvage operations, is an unconstitutional delegation of legislative power in that it allows the town council unlimited discretion to renew or revoke licenses. We agree.

Under our constitution, the General Assembly's unbridled delegation of its legislative power is unconstitutional and void. *City of Warwick v. Warwick Regular Firemen's Association*, 106 R.I. 109, 256 A.2d 206 (1969). This so-called nondelegation doctrine does not entirely prohibit the General Assembly from delegating portions of its legislative power so long as the delegation is reasonable.[5] *Jennings v. Exeter-West Greenwich Regional School District Committee*, 116 R.I. 90, 97, 352 A.2d 634, 638 (1976). The delegation will be deemed reasonable, and therefore lawful, if it is limited by standards sufficient to confine the exercise of that power for the purpose for which the delegation was made. *DePetrillo v. Coffey*, 118 R.I. 519, 523, 376 A.2d 317, 319 (1977). "[I]f the statute declares a legislative purpose, establishes a primary standard for carrying out the use, or lays out an intelligent principle to which an administrative officer or body must conform," then the delegation will be upheld. *Davis v. Wood*, 427 A.2d 332, 336 (R.I. 1981).

**4.** In all relevant aspects, the Johnston Town Ordinances §§ 5–8 through 5–18 are virtually identical to the statutory provisions of chapter 21 of title 5.

**5.** The nondelegation doctrine stems from Rhode Island Constitution, art. VI, §§ 1 and 2, which provides that the Rhode Island Constitution shall be the supreme law of the state and that legislative power shall rest in the two houses of the Legislature. (R.I. Const. art. IV, §§ 1 and 2 became art. VI, §§ 1 and 2 on December 4, 1986, the effective date of the recent constitutional rewrite.) The purpose of the nondelegation doctrine is to protect the citizens against arbitrary and discriminatory action by public officials. *Davis v. Wood*, 427 A.2d 332, 335 (R.I. 1981).

In *Thompson v. Town of East Greenwich*, 512 A.2d 837 (R.I. 1986), the trial court declared G.L. 1956 (1976 Reenactment) § 3-5-21, which implicitly empowers local liquor-licensing boards to impose conditions on license holders and authorizes them to revoke or suspend a license for breach of any condition, unconstitutional as violative of the nondelegation doctrine. We reversed, relying on the language contained in § 3-1-5, which declares that the purpose of title 3 is to promote the "reasonable control of * * * alcoholic beverages." We deemed it a sufficient restriction on the local board's power that § 3-1-5 requires conditions placed upon the issuance of a liquor license to be "reasonable." 512 A.2d at 842.

Similarly, in *Davis v. Wood, supra,* where we were concerned with the nondelegation doctrine's application to legislation authorizing licensing of solid-waste-management facilities, we found the Legislature's 1974 directive that activities relating to the management of solid waste be conducted "in an environmentally sound manner" created a sufficiently intelligible standard to guide the Department of Environmental Management in carrying out its responsibilities. 427 A.2d at 336.

 In this case § 5-21-1 articulates no legislative purpose and sets forth no primary standard to carry out the policy, nor does it establish an intelligent principle to guide the town council. Section 5-21-1 simply leaves the question of license renewal and revocation to the "pleasure" of the town council. As such it constitutes an impermissible delegation of power by the Legislature in contravention of R. I. Const. art. VI, §§ 1 and 2.

For the above-stated reasons, the petition for certiorari is granted, the judgment of the town council is quashed, and the papers in the case shall be remanded to the town council with our decision endorsed thereon.