William J. FLYNN, Jr. et al.

v.

Earl A. KING et al.

WEST GLOCESTER FIRE DISTRICT
et al.

v.

William J. FLYNN, Jr. et al.

Nos. 79–349–M.P., 79–352–Appeal.

Supreme Court of Rhode Island.

July 29, 1981.

Dennis S. Baluch, Providence, for petitioner-defendant.

Bradley L. Steere, Glocester, for respondents-plaintiffs.

## OPINION

BEVILACQUA, Chief Justice.

In this matter we have consolidated a petition in equity in the nature of *quo warranto* with an appeal from a trial justice's ruling that the enfranchisement provisions of the West Glocester Fire District's legislative charter are constitutional. The plaintiffs initially filed a complaint in the Superior Court in the nature of *quo warranto* seeking an order for equitable relief. Because the relief sought was in the nature of *quo warranto* the trial justice ruled that G.L.1956 (1969 Reenactment) § 10–14–1 vests exclusive jurisdiction to consider such a petition in the Supreme Court. However, the trial court considered the balance of the complaint as one for declaration of rights, status, and liabilities as to the eligibility of persons to vote in the West Glocester Fire District elections. After hearing testimony and reviewing evidence, the trial justice

held that §§ 2 and 4 of the fire district's legislative charter were constitutional and not violative of the equal protection clause of the Fourteenth Amendment. He determined that the act carries with it the presumption of constitutionality and concluded that there was a "rational basis" for the enactment. The trial justice reasoned that prior to the enactment of this legislation, fire prevention services were either absent or rendered on a voluntary basis. Since someone now had to pay for the provision of these services, he concluded that those who were to pay should decide in their own meetings how much they were to pay. Thus, there was a rational basis for limiting the right to vote at the fire district meetings to those members of the electorate who own taxable property in the district. The defendants appeal.

In the meantime, defendants filed a petition in equity in the nature of *quo warranto* in the Supreme Court. They sought a determination as to which parties, among the adverse claimants to various offices in the fire district, are entitled to hold office.

In order to properly dispose of the questions raised, we consolidated defendants' petition for *quo warranto* and their appeal from the judgment of the trial court on plaintiffs' petition for declaration of rights.

The West Glocester Fire District was incorporated by an act of the General Assembly on May 5, 1959. Section 2 of the act provides:

"The *taxable property owners* of said district, shall be eligible to vote and act in all meetings of the corporation." (Emphasis added.)

Section 4 provides in pertinent part:

"The *taxable property owners* of the district at each annual meeting, and at any other meeting when vacancies occur, may elect officers * * *." (Emphasis added.)

Essentially, the charter provides that in order to be eligible to vote one must be an owner of taxable property in the district. Sections 7 and 11 of the charter allow for the enactment of by-laws.

By-laws were enacted and most recently amended on September 28, 1978. Article 2 of the by-laws provides for a district moderator, a clerk, a treasurer, a tax collector, three tax assessors, and a three-member executive board. Article 4 provides in pertinent part:

"The terms of all officers shall be for a term of one year with the exception of the Executive Board, who shall be elected for staggered three-year terms * * *."

The district apparently operated without major problems until the summer of 1979. Three meetings were held during that summer and certain questions about whether these meetings were initiated and conducted properly had to be answered in order to determine which parties to the *quo warranto* petition were entitled to hold office in the West Glocester Fire District. We therefore remanded the *quo warranto* portion of this case to the Superior Court for an evidentiary hearing and findings of fact. A hearing was held before a Superior Court trial justice, and he has since submitted his findings of fact.[1]

---

1. The trial justice made the following findings of fact:

"1. Joan Andrews was duly and legally elected treasurer of the West Glocester Fire District August 4, 1979.
2. There was never a formal motion and vote to accept the oral resignation of Earl A. King given June 28, 1979. Therefore, it never took effect.
3. The unilateral action of Mr. and Mrs. Jervis, two of the three members of the board of canvassers, excluding qualified voters, invalidated all business conducted at the July 12, 1979 special meeting.
4. The election of William Flynn to the office held by Earl A. King is invalid because it occurred at the illegal meeting of July 12, 1979.
5. David Villanova was properly elected to the executive board on August 4, 1979.
6. Sharon Jervis, Joyce Davis and Norman Davis were legally elected as tax assessors of the district on August 4, 1979.
7. Albert Stevenin is a voter in the fire district and, therefore, was legally elected as tax collector for the district on August 4, 1979.
8. Ronald Labutti was duly elected as moderator of the district on August 4, 1979.
9. Mildred Doar was duly elected as clerk of the district on August 4, 1979."

The issue raised is whether the provisions of the charter which limit the right to vote and hold office in the fire district are in violation of the Fourteenth Amendment to the United States Constitution and art. XXXVIII of the Rhode Island Constitution and G.L.1956 (1969 Reenactment) § 17–9–19. If the charter is found to be unconstitutional, we must then determine whether the parties presently holding office will be allowed to continue therein until their terms expire.

The defendants claim that the provisions, as applied, exclude nonproperty owners from elections and as such violate the equal protection clause of the United States Constitution. The defendants argue that the scheme for election of officers of the district is therefore invalid and that this partial disenfranchisement of nontaxpayers denies them equal protection.

In *Reynolds v. Simms*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), the Court held that a citizen's right to vote in a state or federal election cannot be diluted or debased. However, the strict demands of *Reynolds v. Simms*, are not applicable to a district election when the district neither enacts laws governing the conduct of citizens nor administers the normal functions of government such as the maintenance of streets, the operation of schools, police and fire departments, hospitals and other facilities designed to improve the quality of life within the district. *Salyer Land Co. v. Tulare Water District*, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973). But, in an election of officials of a county government, where the electoral officials exercised "general governmental powers over the entire geographic area served by the body[,]" the *Reynolds* rule is applicable. *Avery v. Midland County Texas*, 390 U.S. 474, 485, 88

S.Ct. 1114, 1120, 20 L.Ed.2d 45, 53 (1968). In this case, we therefore must consider the constitutionality of a classification restricting the right to vote in this particular election.

The United States Supreme Court has stated that in an election of general interest, restrictions on the franchise other than residence, age, or citizenship must promote a compelling state interest in order to survive constitutional attack. *Kramer v. Union Free School District*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). This is necessary because "[s]tatutes granting the franchise to residents on a selective basis always pose the danger of denying some citizens any effective voice in the governmental affairs which substantially affect their lives." *Id.* at 626–27, 89 S.Ct. at 1889, 23 L.Ed.2d at 589. In *Kramer*, the United States Supreme Court held that the exclusion of otherwise qualified voters from school-district elections denied these voters equal protection.

Since its decision in *Kramer*, the Supreme Court has invalidated state laws that made voting rights contingent on property ownership in elections involving municipal utility bonds,[2] general obligation bonds,[3] and bonds for the construction of a city library.[4] More recently, however, the Court has chosen not to extend this protection to qualified voters who resided in a water district that limited voting eligibility to landowners.[5] *Ball v. James*, —— U.S. ——, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981).

The basic principle expressed in these cases is that as long as the election is one of general interest, any restriction must demonstrate that it serves a compelling state interest. *Kramer v. Union Free School District, supra.*

---

2. *Cipriano v. City of Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969).

3. *City of Phoenix v. Kolodziejski*, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970).

4. *Hill v. Stone*, 421 U.S. 289, 95 S.Ct. 1637, 44 L.Ed.2d 172, *reh. denied*, 422 U.S. 1029, 95 S.Ct. 2617, 45 L.Ed.2d 686 (1975).

5. The district in *Ball v. James*, —— U.S. ——, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981) also provided electrical power to approximately half of the state of Arizona. However, the court indicated that the provision of electricity is not a "traditional element of governmental sovereignty." *Id.* at ——, 101 S.Ct. at 1819, 68 L.Ed.2d at 161 (*citing Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353, 95 S.Ct. 449, 454, 42 L.Ed.2d 477, 485 (1974)).

Over one hundred years ago we determined that a fire-engine company "must be regarded as a public or quasi municipal corporation." *Cole v. Fire-Engine Company*, 12 R.I. 202, 204 (1878). Since the concept of the present-day fire district evolved from these colonial fire-engine companies, we later determined that fire districts are also public or quasi-public corporations. *Wood v. Quimby*, 20 R.I 482, 40 A. 161 (1898).

In *Kennelly v. Kent County Water Authority*, 79 R.I. 376, 89 A.2d 188 (1952), we reasserted the quasi-municipal status of a fire district. In that case we noted the limited function of a water district and contrasted its function to that of a fire district. We specifically determined that the water authority did not have the quasi-municipal status of a fire district. *Id.* at 380, 89 A.2d at 191.

In light of *Kennelly*, we are of the opinion that the character of the West Glocester Fire District is unlike that of the water district that limited voter eligibility to landowners. *Ball v. James, supra*. Fire protection is a governmental function that "substantially affects" every resident and property owner in the West Glocester Fire District. Further, the Supreme Court, in reviewing the status of firefighters as agents of the government, has inferentially indicated that fire protection is an element of government sovereignty. *See Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). Therefore, since fire protection is a governmental function, the voting restriction set forth in the legislative charter of the West Glocester Fire District must be shown to be necessary to "promote a compelling state interest." *Kramer v. Union Free School District*, 395 U.S. at 630, 89 S.Ct. at 1891, 23 L.Ed.2d at 591.

The fact that a fire district is supported by a property tax does not mean that only those subject to a direct assessment felt the effects of the tax burden. Many non-property-owning residents indirectly provide financial support for the district.[6] They share a common interest with the property owners in the type of fire protection provided, and they are equally affected by the outcome of the elections. But even the inclusion of people who pay tax indirectly would not exhaust the class of persons interested in quality fire protection. Every person who either owns property or resides within the district is potentially affected by the type of fire protection provided.

In an election of general interest, restrictions on the franchise of any character must meet a stringent test of justification. Mere reasonableness will therefore not suffice to sustain the classification created. *City of Phoenix v. Kolodziejski*, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970).

The trial justice used the inappropriate "rational basis" standard in assessing the validity of the legislative charter. Although there may have been a "rational basis" for limiting the franchise to taxable-property owners, we are of the opinion that no "compelling state interest was promoted" by the exclusion of otherwise qualified voters who did not own property in the West Glocester Fire District. The legislative charter of the West Glocester Fire District denies equal protection to certain qualified voters and therefore is invalid.

In light of the importance of fire protection, we shall not impose today's decision retroactively. To do so would impose "significant hardships" upon the residents and property owners of the fire district. *See Cipriano v. City of Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969). The prospective application of our decision therefore requires us to review the *quo warranto* petition.

---

6.  "Property taxes may be paid initially by property owners but a significant part of the ultimate burden of each year's tax on rental property will very likely be borne by the tenant rather than the landlord since * * * the landlord will treat the property tax as a business expense and normally will be able to pass all or a large part of this cost on to the tenants in the form of higher rent." *City of Phoenix v. Kolodziejski*, 399 U.S. 204, 210, 90 S.Ct. 1990, 1994, 26 L.Ed.2d 523, 528 (1970).

Although the majority of claims involved in the *quo warranto* petition are now moot, the terms of two members of the executive board have not yet expired. The trial justice determined that Earl A. King was entitled to serve on the executive board until the expiration of his term in August of 1981. He further determined that David Villanova was properly elected to the board for a term that is to expire in August of 1982. Upon review of the entire record and of the trial justice's findings of fact, we uphold the above determinations. These two people shall, for the remainder of their respective terms, act as trustees for the fire district to enable it to continue to function until the General Assembly amends the charter or proper elections, consistent with this decision, are held.

In all such elections, those persons who reside in the district and are eligible to vote in a general or special election in the town of Glocester, shall be permitted to vote, whether or not they own taxable property.

SHEA, J., did not participate.