Steven P. **BOURQUE**

v.

Raymond **DETTORE**, Jr., et al.

No. 89–193–M.P.

Supreme Court of Rhode Island.

April 11, 1991.

James W. McKay and Edward L. Maggiacomo, Adler, Pollock & Sheehan, Inc., Providence, for petitioner.

David Curtin and Edward Clifton, for the City of Providence.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court on a petition for certiorari, challenging the denial of a license by the Providence Board of Licenses. We affirm.

The petitioner, Steven P. Bourque (Bourque), is the owner of a parcel of real estate located at 61 Pilsudski Street in Providence, Rhode Island. This lot, designated by the Zoning Ordinance of the City of Providence as M-1, general industrial use, is adjacent to an R-3 general residential zone.

On December 12, 1988, Bourque filed an application with the Providence Board of Licenses requesting a license to operate a "white goods" recycling facility pursuant to G.L.1956 (1987 Reenactment) chapter 21 of title 5, and article VII, § 14-127 through 14-145 of the Providence Code of Ordinances. White-goods salvage involves the reclamation of large household appliances such as refrigerators, stoves, air conditioners, and microwaves. The operation was to consist of extracting from the appliances capacitors containing polychlorinated biphenyls (PCBs).[1] Four separate public hearings were held by the Providence Board of Licenses (board) between January and April of 1989. On April 5, 1989, the board denied the application, relying on its finding that a legal remonstrance existed pursuant to § 5-21-2(b). The board explained that according to a report from the Providence police department, 53.7 percent of the neighbors within the statutorily designated radius (200 feet) of the property in question objected to petitioner's application and that, therefore, the issuance of the license must be denied.

A petition for writ of certiorari was filed on May 11, 1989. On January 4, 1990, we granted certiorari to address two issues: whether the licensing regulations of § 5-21-2 are an unconstitutional delegation of legislative authority and whether the licensing regulations of § 5-21-2 violate either the due-process or the equal-protection clause of the United States or Rhode Island Constitution.

■ We first consider the delegation issue. The nondelegation doctrine stems from article IV, sections 1 and 2, of the Rhode Island Constitution, which provide that the Rhode Island Constitution "shall be the supreme law of the state" and that the legislative power thereunder shall be vested in the two houses of the Legislature. The purpose of the nondelegation doctrine is twofold: to ensure that basic policy choices will be made by duly authorized and politically responsible officials and to protect citizens against arbitrary and discriminatory action by public officials. *See Davis v. Wood*, 427 A.2d 332, 335 (R.I.1981). Under the doctrine, therefore, any unbridled delegation of legislative power by the General Assembly is unconstitutional and void. *Metals Recycling Co. v. Maccarone*, 527 A.2d 1127, 1129 (R.I. 1987) (citing *City of Warwick v. Warwick Regular Firemen's Association*, 106 R.I. 109, 256 A.2d 206 (1969)). As a practical matter, however, the doctrine does not absolutely prohibit the delegation of legislative power so long as the delegation is reasonable. We have previously recognized the Legislature's need to employ administrative agents in order to effectuate the beneficial purposes of legislation: "[T]he problems which a modern legislature must confront are of such complexity that strict adherence to ideal notions of the nondelegation doctrine would unduly hamper the General Assembly in the exercise of its constitutionally vested powers." *Milardo v. Coastal Resources Management Council*, 434 A.2d 266, 270 (R.I.1981) (quot-

---

1. Bourque testified at the hearings that the reclamation process solely involved extracting the capacitors from the appliances without touching or exposing the enclosed PCB element. The extracted capacitors are then shipped to another facility for separation and treatment of the PCBs contained therein.

ing *Adams v. North Carolina Department of Natural & Economic Resources*, 295 N.C. 683, 696–97, 249 S.E.2d 402, 410 (1978)).

■ In determining whether the legislative delegation in § 5–21–2 is unconstitutional, we examine the specificity of the functions delegated, the standards accompanying the delegation, and the safeguards against administrative abuse. *Milardo*, 434 A.2d at 271. Consequently the delegation of legislative power will be upheld if the statute "declares a legislative purpose, establishes a primary standard for carrying out the use, or lays out an intelligent principle to which an administrative officer or body must conform." *Davis*, 427 A.2d at 336. As long as the Legislature demonstrates standards or principles to confine and guide the agency's power, this court will, as we have in the past, sustain the delegation. *Id.* (citing *First Republic Corp. of America v. Norberg*, 116 R.I. 414, 358 A.2d 38 (1976); *J.M. Mills, Inc. v. Murphy*, 116 R.I. 54, 352 A.2d 661 (1976)).

Section 5–21–2(b) provides in relevant part:

"No license shall be granted under this chapter to the keeper of any shop or storehouse for the reception of any junk, old metals, or other second-hand articles or to a person establishing, operating or maintaining an automobile junkyard, in any location not lawfully occupied for that purpose at the time of the application for the license, where the owners or occupants of the greater part of the land within two hundred feet (200′) of that building or place shall file with the board, town council, or city council, respectively, having jurisdiction to grant licenses, their objection to the granting of the license." [2]

Bourque contends that § 5–21–2(b) violates the nondelegation doctrine of the Rhode Island Constitution because of its failure to set forth standards or relevant considerations to guide the licensing board in its determinations. He further argues that this case is controlled by *Metals Recycling Co. v. Maccarone*, 527 A.2d 1127 (R.I.1987), where this court held that § 5–21–1, governing renewal and revocation of second-hand dealers' licenses, was unconstitutional as an improper delegation of legislative authority. In *Metals Recycling Co.*, this court determined that the statutory delegation to a town or city council authorizing the "issuing or revocation *at pleasure* of licenses" constituted an unbridled delegation of legislative power. *Id.* at 1129.

■ No such unconstrained legislative delegation is present in the case at bar. First of all, § 5–21–2(b) is limited in scope. The local licensing authority is empowered under this statute to regulate only "keeper[s] of any shop or storehouse for the reception of any junk, old metals, or other second-hand articles" and persons "establishing, operating or maintaining an automobile junkyard." By its terms the statute confers the limited function of granting a license to these specific applicants after posted or published notice, with a public hearing, and upon the payment of a nominal licensing fee. The statute clearly contemplates that such license will be freely granted unless "the owners or occupants of the greater part of the land within two hundred feet * * * shall file * * * their objection." Section 5–21–2, unlike the statute in *Metals Recycling Co.*, delegates clear and precisely defined functions. The specificity of the statute's language creates inherent limitations on the authority of the board and ensures against the possibility of

**2.** Pursuant to G.L.1956 (1987 Reenactment) § 5–21–2(b), article VII, § 14–128 of the Providence Code of Ordinances sets forth relevant procedures for the issuance of licenses. Section 14–127 contains the basic implementing language and provides in relevant part:

"No person shall engage in the business of purchasing, selling, bartering or dealing in junk, old metals or secondhand articles, whether as a keeper of a shop or storehouse for the reception of the same, or as a gatherer

of the same in any bag, wagon or cart, or as a foundryman or other person receiving the same for the purpose of melting the same or converting the same into castings, unless such person shall be duly licensed by the bureau of licenses."

The remainder of the ordinance addresses the form of application, fees, notice requirements, and applicable rules and regulations governing licensed operators. *See* art. VII, § 14–129 through 14–145.

administrative abuse. "[W]hen the delegation of legislative power to an administrative agent is accompanied by sufficient standards or safeguards to prescribe the exercise of that power, the delegation will be deemed reasonable and lawful." *State v. Peloquin,* 427 A.2d 1327, 1330 (R.I.1981). Consequently we find no reason to declare § 5–21–2 unconstitutional as an improper delegation of legislative power.[3]

■ Alternatively Bourque asserts that the procedure under § 5–21–2 vesting "neighbors" with the right to veto license grants violated his due-process rights because it impermissibly delegated governmental authority to private citizens. This argument assumes that the operation of § 5–21–2 deprived Bourque of "liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. At the outset we do not believe that the due-process clause constrains the state's prerogative to limit a person's privilege to conduct offensive land uses or highly regulated enterprises. Clearly Bourque has no "entitlement" to operate the proposed recycling facility that would implicate a property interest, nor does his license application involve a "fundamental" or "natural" right that might be characterized as a protected property interest. Nevertheless, we do recognize that at some point the arbitrary and capricious nature of a private entity's actions, resulting from a standardless delegation of legislative authority, might constitute a due-process violation. *Grendel's Den, Inc., v. Goodwin,* 662 F.2d 88, 90 n. 4 (1st Cir.1981), *aff'd on other grounds sub. nom., Larkin v. Grendel's Den, Inc.,* 459 U.S. 116, 103 S.Ct. 505, 74 L.Ed.2d 297 (1982).

In alleging that the neighbors' veto constitutes a substantive due-process violation, Bourque relies on two cases: *Eubank v. City of Richmond,* 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156 (1912), and *Washington ex rel. Seattle Title Trust Co. v. Roberge,* 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928). In *Eubank* the United States Supreme Court invalidated a city ordinance that empowered two-thirds of the property owners on any block to establish, within a specified range, a building-setback line. The purpose of the statute was to limit construction in close proximity to streets. However, the Court found that the conferral of authority to those property owners had a tenuous connection to the public safety, convenience, and welfare. Recognizing that the statute and ordinance virtually authorized property owners to indulge in "caprice" or "taste" when arbitrarily selecting the location of the setback line, the Court concluded, "It is hard to understand how public comfort or convenience, much less public health can be promoted by a line which may be so variously disposed." 226 U.S. at 144, 33 S.Ct. at 77, 57 L.Ed. at 159.

Five years later the United States Supreme Court in *Thomas Cusack Co. v. City of Chicago,* 242 U.S. 526, 37 S.Ct. 190, 61 L.Ed. 472 (1917), upheld a city ordinance that prohibited the construction of billboards in residential areas without the consent of a majority of property owners on the block in which the billboard was to be erected. The Court determined that the ordinance was within the city's police power because regulation of billboards had properly been shown to be "in the interest of the safety, morality, health and decency of the community." *Id.* at 530, 37 S.Ct. at 191, 61 L.Ed. at 475.

---

**3.** We are aware that Bourque suggests that we find as instructive *Geo–Tech Reclamation Industries, Inc. v. Hamrick,* 886 F.2d 662 (4th Cir. 1989). There, a portion of the West Virginia Solid Waste Management Act, which permitted the licensing authority to deny a solid-waste-facility permit on the basis of adverse "public sentiment" constituted an impermissible delegation of legislative authority. The court reasoned that the licensing authority had no rational method to assess or measure the adverse public sentiment and that, therefore, the denial of a license based on authority " 'uncontrolled by any standard or rule prescribed by legislative action' " was essentially so arbitrary that it constituted a due process violation. *Id.* at 665.

The case at bar involves no such standardless delegation. The Providence license board exercises no discretion at all because the adverse public sentiment necessary to veto a license application is independently determined through a clear and unambiguous formula so that a proposed license is freely granted unless a majority of the owners and occupants within 200 feet of the property in question file an objection.

In *Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928), the second case upon which Bourque relies, the Court struck down a zoning ordinance that prohibited philanthropic homes for children or old people unless a majority of property owners within the district consented. The Court, relying on *Eubank*, distinguished *Cusack* by characterizing billboards as a potential nuisance to the community since they were "liable to endanger the safety and decency of such districts." 278 U.S. at 122, 49 S.Ct. at 52, 73 L.Ed. at 214. Emphasizing the distinction in public-policy considerations amongst the three cases, the Court concluded:

> "[T]here is no legislative determination that the proposed building and use would be inconsistent with public health, safety, morals or general welfare. The enactment itself plainly implies the contrary. The grant of permission for such building and use, although purporting to be subject to such consents, shows that the legislative body found that the construction and maintenance of the new home was in harmony with the public interest and with the general scope and plan of the zoning ordinance." *Id.* at 121, 49 S.Ct. at 52, 73 L.Ed. at 213.

■ A general principle to be drawn from *Eubank*, *Cusack*, and *Roberge* is that the government's power to interfere with the general rights of a landowner by restricting the character of his use is not unlimited, and any restriction upon his use cannot be imposed unless it bears a "substantial relation to the public health, safety, morals, or general welfare." *Roberge*, 278 U.S. at 121, 49 S.Ct. at 51–52, 73 L.Ed. at 213 (quoting *Nectow v. Cambridge*, 277 U.S. 183, 188, 48 S.Ct. 447, 448, 72 L.Ed. 842, 844 (1928)). Thus the validity of a legislative delegation often hinges on the relation of the contested statute or ordinance to matters properly the subject of state or municipal regulation under the police power. *Grendel's Den*, 662 F.2d at 92. Consequently land use restrictions, including those prescribed by the Legislature in § 5–21–2, must find their justification in the police power exerted in the interest of the public and must not impose unnecessary or unreasonable restrictions upon the "use of private property or the pursuit of useful activities." *Roberge*, 278 U.S. at 121, 49 S.Ct. at 52, 73 L.Ed. at 213.

Although Bourque's proposed land use may well be characterized as a use of private property for the pursuit of useful activities, the Legislature deemed it necessary to provide the residents of local cities and towns with the power to regulate, among other things, storehouses and dealerships engaged in the recycling of white goods. The Legislature clearly intended to circumscribe activities by landowners that potentially could have adverse effects on neighboring land-owners. Junkyards, scrap yards, and storehouses engaged in receiving or recycling "junk, old metals, or other second-hand articles" are by their nature liable to be offensive to neighboring landowners. They are uses of property that are manifestly subject to legislative regulation because they are apt to involve heavy trucking, noise, eye-sores, odors, traffic congestion, and soil contamination. In a residential setting where there may be children, schools, rivers, parks, or general harmony, the noxious effects of such activities are almost certain to be characterized as nuisances and are more than likely to work "injury, inconvenience or annoyance" to neighbors and the community at large. *Roberge*, 278 U.S. at 122, 49 S.Ct. at 52, 73 L.Ed. at 214. Consequently we believe that such matters certainly bear a substantial relation to the public health, safety, and decency of the community and, therefore, may properly be the subject of state or municipal regulations under the police power—even if conditioned on the objection of neighboring landowners.

■ Although the land use restrictions under § 5–21–2 are matters properly within the scope of the state's police power, we recognize that the promulgation of regulations through private citizens must nevertheless satisfy the requirements of an otherwise proper delegation of legislative authority. Thus, we bear in mind that "legislative bodies must not abrogate their responsibility to formulate and impose policy

regarding matters such as zoning or the issuance of governmental privileges, by delegating this responsibility to private parties 'uncontrolled by any standard or rule prescribed by legislative action.'" *Grendel's Den,* 662 F.2d at 93 (quoting *Roberge,* 278 U.S. at 122, 49 S.Ct. at 52, 73 L.Ed. at 214). In the case at bar we believe that the legislative scheme within § 5–21–2 falls entirely within the range of permissible legislative delegations. The statute is braced with specific language and inherent limitations such that the private citizens who are empowered to object to a proposed land use are not formulating governmental policy but rather are implementing the articulated will of the Legislature. Section 5–21–2 is unlike the ordinance in *Eubank* where the Legislature authorized a majority of the neighbors on a block to impose a building-setback restriction at some arbitrarily selected distance from the road. *Eubank* involved a true unconstitutional delegation—"not because of the majority consent procedure but rather because until the majority of owners on the block fixed the property line, there was no normative standard against which to judge the legality of the proposed construction." *Silverman v. Barry,* 851 F.2d 434, 437 (D.C.Cir.1988). Thus it was not solely the neighbors' authority to impose the setback restriction that constituted an impermissible delegation but rather their authority additionally to determine the setback distance itself. In the case at bar the neighbors who file an objection are not creating the regulation or prescribing conditions for its application. To the contrary, the General Assembly enacted a definitive regulation and merely conditioned its operation upon the approval of a majority of the residents to be affected by the legislation. The constitutionality of such a contingency was addressed by the United States Supreme Court in *Currin v. Wallace:*

"While in a sense one may say that such residents are exercising legislative power, it is not an exact statement, because the power has already been exercised legislatively by the body vested with that power under the Constitution, the condi-

tion of its legislation going into effect being made dependent by the legislature on the expression of the voters of a certain district." *Currin v. Wallace,* 306 U.S. 1, 16, 59 S.Ct. 379, 387, 83 L.Ed. 441, 452 (1939) (quoting *Hampton, Jr., & Co. v. United States,* 276 U.S. 394, 407, 48 S.Ct. 348, 351, 72 L.Ed. 624, 629 (1928)).

Bourque contends, nevertheless, that regardless of whether the land use regulations were within the Legislature's exercise of legitimate police power, the delegation in § 5–21–2 must fail because a legislative delegation may solely empower private citizens to permit a use otherwise already validly prohibited by the Legislature. As authority for this proposition, Bourque cites *Silverman v. Barry,* 845 F.2d 1072 (D.C.Cir.1988), where the United States Court of Appeals for the District of Columbia Circuit held that two criteria must be satisfied in order for a legislative delegation to private citizens to withstand a due-process challenge: "First, the underlying exercise of authority must be a reasonable regulation within the power of the government. * * * Second, the legislature's restrictions must be in the form of a general prohibition, and the delegation must be in the form of permitting private citizens to waive the protection of that prohibition." *Id.* at 1086.

We have already explained why the operation of § 5–21–2 is a reasonable regulation within the permissible scope of governmental authority. Therefore, the first criterion is satisfied. As to the second criterion— that the delegation must be in the form of a general prohibition—we are not persuaded that such a result is mandated by the United States Supreme Court. The petitioner and the court in *Silverman* rely on the language by which the United States Supreme Court distinguished *Cusack* from *Eubank:*

"A sufficient distinction between the ordinance there considered [in *Eubank* ] and the one at bar is plain. The former left the establishment of the building line untouched until the lot owners should act and then made the street committee the mere automatic register of that action

and gave to it the effect of law. The ordinance in the case at bar absolutely prohibits the erection of any billboards in the blocks designated, but permits this prohibition to be modified with the consent of persons who are to be most affected by such modification. The one ordinance permits two-thirds of the lot owners to impose restrictions upon the other property in the block, while the other permits one-half of the lot owners to remove a restriction from the other property owners. *This is not a delegation of legislative power, but is, as we have seen, a familiar provision affecting the enforcement of laws and ordinances."* (Emphasis added.) *Thomas Cusack Co.*, 242 U.S. at 531, 37 S.Ct. at 192, 61 L.Ed. at 476.

Thus the Court in *Cusack* did not hold that a legislative delegation to private citizens would be invalid when it permitted property owners to impose restrictions on neighboring property—it held only that the ordinance in *Cusack*, unlike that in *Eubank*, was not a legislative delegation at all but rather a "provision affecting the enforcement of laws and ordinances." Therefore, any analysis of that issue was unnecessary. Although the legislative delegation in *Eubank* was held unconstitutional, there is no language to suggest that the form of the voting procedure was constitutionally significant. Had the ordinance authorized private citizens to impose a setback restriction at a legislatively predetermined distance, there is reason to believe that the outcome of the Court's decision would have been different—assuming, of course, that the setback restrictions were matters properly within the state's "police power." Similarly in *Roberge* the Court held that the zoning regulation was not in furtherance of a legitimate public-policy interest. Nevertheless, in neither *Eubank* nor *Roberge* were the merits of the case reached with refer-

ence to whether it was constitutionally necessary for the statute or ordinance to be in the form of a general prohibition contingent upon a waiver by private citizens.

Consequently neither do we, nor did the United States Supreme Court hold that *Eubank*, *Cusack*, and *Roberge* should be construed to mandate that the mitigating consent of private citizens be ascertained in only one particular form—"that modification of a prohibition upon an affirmative expression of 'consent' is valid, whereas modification of the same prohibition upon a 'lack of objection' is constitutionally impermissible." *Grendel's Den*, 662 F.2d at 93. For a statute's validity to turn ultimately on whether the designated neighbors have the right to waive a prohibition or may simply exercise a veto when the proponent (Bourque) seeks to obtain a license would result in a distinction that is "both artificial and illogical." *Id.* Essentially, *Eubank*, *Cusack*, and *Roberge* really turn on whether the Supreme Court recognized the protection of a legitimate public-policy interest, and where these interests are protected by validly framed legislative regulations that reflect a clear expression of the governmental policy, this court will not interfere. In the case at bar, there is a clear legislative expression that the regulated land uses under § 5–21–2 may well be of such detrimental quality to abutting landowners that any such license should not be granted over their objection. *See Newport Auto Salvage, Inc. v. Town Council of Portsmouth*, 502 A.2d 339, 343 n. 1 (R.I. 1985).[4]

■ As a separate substantive due-process claim, Bourque argues that the phrase "owners or occupants" is so vague that the statute must be declared void. The test for whether a statute is void for vagueness is "whether the language used is commonly understood by persons of ordi-

---

**4.** In *Newport Auto Salvage, Inc. v. Town Council of Portsmouth*, 502 A.2d 339 (R.I.1985), we recognized that an automobile junkyard is, as we have deemed a white-goods recycling facility, of "such a noxious nature that the limitation upon the power to grant such a license under circumstances wherein the owners of a majority of land within the prescribed distance object to the

granting of the same seems to violate no specific provision of either the State or the Federal Constitution." *Id.* at 343 n. 1. Although petitioner argues that these propositions were dicta from this court, our holding in the case at bar should dispel any doubt concerning this court's belief that § 5–21–2 is constitutional.

nary intelligence." *State v. Picillo*, 105 R.I. 364, 369, 252 A.2d 191, 194 (1969). In *Goldberg v. Board of Licenses of Providence*, 525 A.2d 1295 (R.I.1987), this court determined that the plain and ordinary meaning of the terms "owners and occupants" necessitated the gathering of signatures of all objecting owners and occupants in order for the entire footage of a parcel to be considered as objecting. The court then addressed two specific situations involving neighbors who filed objections to the license grant. One involved three parcels that were individually owned as tenancies by the entirety. The court held that only half of the total square footage of each of the lots should be counted since only one of the two spouse-owners signed the objection. Similarly, a parcel owned by two couples, wherein each couple owned an undivided one-half interest as tenants by the entirety, was not considered to have full objecting status until all four title owners had officially objected *or* until "evidence was introduced to suggest that the person signing the petition or affidavit of objection for each of these lots was acting on behalf of the other owner or owners." *Id.* at 1297 n. 3. In light of *Goldberg* we believe that in order for the entire square footage of a designated parcel to be considered objecting, *all* persons who have title to the property including, but not limited to, sole title holders, tenants by the entirety, joint tenants, and tenants in common must file an objection and demonstrate with evidence that the objection represents all others who have a title interest in the designated parcel.

■■■■■ As a final due-process challenge, Bourque alleges that the licensing procedure under § 5–21–2 deprived him of a meaningful opportunity to be heard. We have no doubt that the due-process requirements of a fair trial apply to the procedures of administrative agencies. *Davis v. Wood*, 427 A.2d at 336. Clearly the hearings before the Providence licensing board were administrative in nature, and as such, Bourque was entitled to an opportunity to be heard at a meaningful time and in a meaningful manner. *Millett v. Hoisting Engineers' Licensing Division*, 119 R.I.

285, 296, 377 A.2d 229, 236 (1977). It is apparent from the record that Bourque was afforded this opportunity on four separate occasions—four extensive public hearings where he presented testimony and witnesses in an attempt to address concerns and to allay the fears of objecting neighbors. We agree with the Providence Board of Licenses that this is all due process requires, and Bourque's inability to assure the objectors of the safety of his project should not be equated with a deprivation of procedural due process.

■■■■ Lastly Bourque contends that the licensing regulations under § 5–21–2 violate the equal-protection clauses of the United States and Rhode Island Constitutions. He argues that a legislative delegation to a narrow segment of the community creates a mini-referendum that violates a fundamental right to vote on matters of general interest mandated by the Constitution. To support this contention, Bourque cites *Flynn v. King*, 433 A.2d 172 (R.I. 1981), in which this court held that geographical restrictions on voting rights within a district must serve a compelling state interest. *Id.* at 174. Furthermore, Bourque argues that in a different context the Supreme Court has suggested that the saving aspect of a statute authorizing a referendum to approve a zoning change is that it is an expression of the will of "all the people" of the community rather than, as in *Eubank* and *Roberge*, a delegation "to a *narrow segment* of the community." *Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 677, 96 S.Ct. 2358, 2364, 49 L.Ed.2d 132, 140 (1976).

We first address whether the voting procedures under § 5–21–2 must serve a compelling state interest as a result of the statute's geographical restriction to neighbors within 200 feet of the disputed property. The basic principle expressed in *Flynn v. King* was that as long as an election was one of general interest, any restriction must demonstrate that it serves a compelling state interest. 433 A.2d at 174 (citing *Kramer v. Union Free School District*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969)). In the case at bar the subject

matter of § 5–21–2 is not a matter within the general interest of the voting district. To the contrary, recycling facilities and junkyards, among the other stigmatized land uses under the statute, are matters of local interest. These land uses are noxious in character and are likely to evolve into localized nuisances. Thus the limited grant of veto rights to neighboring property owners is justified because it does not pertain to a matter within the general interest of the community. Consequently the statute need not demonstrate that it serves a compelling state interest.

For similar reasons the voting procedures under § 5–21–2 need not be an expression of the will of "all the people" of the community. *Eastlake v. Forest City Enterprises, Inc.*, was not concerned so much about whether a delegation to "a *narrow segment* of the community" was absolutely barred as an impermissible legislative delegation. To the contrary, the Court, as in *Cusack*, merely distinguished *Eubank* and *Roberge* as cases involving delegations of legislative power to private citizens, whereas in *Eastlake*, "rather than dealing with a delegation of power, we [the Court] deal with a power reserved by the people to themselves." *Eastlake*, 426 U.S. at 675, 96 S.Ct. at 2363, 49 L.Ed.2d at 139. Although the Court noted that *Eubank* and *Roberge* involved a standardless delegation of power to a limited group of property owners, this observation should not be interpreted to mean that *all* legislative delegations to a narrow segment of the community are *per se* unconstitutional. As we have said before, legislative delegations to private citizens that are not standardless and that are substantially related to the public health, safety, morals, or general welfare will be deemed constitutional— even if they take the form of a neighborhood veto.

It is a well-established rule under Rhode Island law that "statutes enacted by the General Assembly are presumed to be constitutional unless the court is persuaded of their unconstitutionality beyond a reasonable doubt." *Newport Auto Salvage, Inc.*, 502 A.2d at 343 (citing *Chartier Real Estate Co. v. Chafee*, 101 R.I. 544, 225 A.2d

766 (1967); *Opinion to the House of Representatives*, 99 R.I. 377, 208 A.2d 126 (1965)). In light of the arguments presented to this court on appeal, we are convinced that the petitioner has not satisfied this burden. Consequently the constitutionality of § 5–21–2 is reaffirmed.

For the reasons stated, the petition for certiorari is denied, the writ heretofore issued is quashed, the judgment of the Providence Board of Licenses is affirmed, and the papers of the case are remanded to the board with our decision endorsed thereon.