DECISION
Plaintiff, Walter McKnight, appeals the March 10, 1998 decision of the City of Warwick Board of Public Safety ("Board") denying Plaintiff's petition for a service disability pension. Jurisdiction is pursuant to R.I. Gen. Laws § 42-35-15.
 Facts/Travel
Plaintiff, Walter McKnight, a twenty-nine year veteran of the City of Warwick Police Department, resigned from the Police Department on January 4, 1991. Three days later, on January 7, 1991, Plaintiff submitted a request to the Board for a disability pension. (Board's April 20, 1998 decision at 1-2).
Plaintiff's extensive medical history is significant for heart disease. In 1988, while employed as a Police Commander in the Warwick Police Department (third in command), Plaintiff suffered a heart attack which permanently damaged his heart and surrounding arteries. In September 1989, the Department placed him on "on-the-job-injury" status due to progressive angina. Following cardiac catherizations and unsuccessful angioplasty procedures, Plaintiff underwent heart bypass surgery on March 25, 1990. (Board Executive Session record, March 10, 1998 at 1).
After recovering from bypass surgery, and based upon recommendations from Plaintiff's treating physician as well as from an Independent Medical Examiner, Plaintiff returned to work as Police Commander. (Board Executive Session record, March 10, 1998 at 2). Four months later, on January 4, 1991, Plaintiff submitted his letter of resignation. He cited personal reasons for resigning and requested a regular retirement pension. (Board April 20, 1998 decision at 1).
On January 6, 1991, Plaintiff was admitted to Kent County Hospital complaining of chest pains. (Board April 20, 1998 decision at 2). Plaintiff was discharged two days later. On January 7, 1991, Plaintiff petitioned the Board for a service disability pension.
On July 16, 1991, the Board voted to deny Plaintiff's application. Plaintiff filed suit in the United States District Court for the District of Rhode Island alleging that the Board violated his procedural and substantive due process rights by failing to provide a written determination outlining its reasoning for denying his petition and by failing to provide him any procedure to appeal its decision. In 1994, Plaintiff dismissed the Federal Court action after the Board agreed to rehear and reconsider his application. On March 10, 1998, the Board reconsidered Plaintiff's application and again denied his request for a disability pension. It is from this decision that Plaintiff takes his appeal.
 Standard of Review
When reviewing administrative agency decisions, the Superior Court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Rocha v. State Public Utilities Com'n, 694 A.2d 722, 725 (R.I. 1997). Such review is limited to questions of law. Bunch v. Bd. of Rev., R.I. Dept. of Emp., 690 A.2d 335, 337 (R.I. 1997). On issues of fact, judicial review is sharply restricted by the dictates of R.I. Gen. Laws § 42-35-15(g) which provides:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences [sic], conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
The Court may not weigh the evidence upon which rests the findings of fact; instead, the Court "merely reviews the record in order to determine whether there is legally competent evidence to support the administrative decision." Bunch, 690 A.2d at 337; Cahoone v. Bd. of Rev. Dept. Employ. Sec., 104 R.I. 503, 506 (1968), 246 A.2d 213, 214-215. Legally competent evidence is defined as, "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." R.I. Temps v. Dept. of Labor and Training, 749 A.2d 1121, 1125 (R.I. 2000). If the record yields more than one logical inference, the Superior Court is still "precluded from substituting its judgment for that of the agency and must affirm the agency's decision unless the agency's findings in support of its decision are completely bereft of any competent evidentiary support." Rocha v. State Public Utilities Com'n, 694 A.2d 722, 726 (R.I. 1997).
 Discussion
Plaintiff seeks to reverse the decision of the Board and argues that the record establishes his claim that he is disabled and qualified to receive a service disability pension under the City of Warwick Board of Public Safety Rules and Regulations Regarding Disability Pensions, September, 1993. Plaintiff contends that the Board's findings are clearly erroneous, arbitrary and capricious, and affected by error of law.
Defendant argues that the decision should be affirmed because competent evidence exists supporting the Board's findings. The Court agrees.
Plaintiff's initial request for a non-disability retirement pension does not bar his subsequent request for disability retirement. Rocha v. State of Rhode Island, 689 A.2d 1059, 1060 (R.I. 1997). Accordingly, the Board considered Plaintiff's case without prejudice to his earlier request and did not penalize him for initially seeking a regular retirement pension.
Plaintiff cannot succeed on his claim for disability service pension unless he proves that he is disabled from performing his usual work as a Police Commander and that the disability is the reason or cause for the retirement. He must then prove that he became disabled during the course of performing his duties. City of Warwick Board of Public Safety Rules and Regulations Regarding Disability Pensions, September, 1993.
If an applicant can establish that he or she is disabled due to a heart attack or hypertension, then under the terms of the pertinent collective bargaining agreement, a presumption arises that the condition was caused by the member's police officer duties. City of Warwick Lodge No. 7, Fraternal Order of Police Agreement (July 1, 1989 to June 30, 1991) Section D.
Plaintiff contends that the Board applied an improper standard in deciding his petition because it erroneously failed to afford him this presumption as to causal connection. However, the Board never reached the issue of causal connection. The Board's consideration of Plaintiff's petition ended with its finding that he had failed to prove that he was disabled. In its April 20, 1998 decision, the Board made the following findings of fact: (1) that the plaintiff failed to prove a disability; and (2) that the Plaintiff failed to establish that he met the requirements for a disability pension. (Board's April 20, 1998 decision at 9).
The Board relied upon the opinions of Independent Medical Examiners, James Mancini, M.D. and Joseph Gaeta, M.D. and rejected the opinion of Plaintiff's own physician, Richard San Antonio, M.D. Dr. Mancini examined Plaintiff. According to his report, Plaintiff experienced increased work related stress and chest tightness after returning to work following bypass surgery. Dr. Mancini noted that these symptoms were unlike those previously experienced by Plaintiff and were not "exertional or similar to his angina prior to surgery." Dr. Mancini commented that the records from Plaintiff's Kent County Hospital stay in January, 1991 were "unremarkable." The physician stated, "At this time, patient does not appear to be disabled for his usual work as a police commander." (Dr. Mancini report February 7, 1991).
Dr. Gaeta examined Plaintiff on February 11, 1991. He noted that Plaintiff had been cleared to return to work following bypass surgery and experienced no anginal discomfort while resuming his duties as a police commander prior to his resignation. Dr. Gaeta acknowledged Plaintiff's complaints that he had periods of anxiety and episodes of hyperventilation after returning to work. However, Dr. Gaeta did not attribute those complaints to Plaintiff's heart condition or to disability, but rather to job related stress. Dr. Gaeta found that:
 There have been unrelated other problems which has made it necessary for him to retire other than for medical reasons. From a strictly medical point of view, he has had a good result from surgery and should be able to perform his regular work . . . He is not disabled from doing his usual work as a police commander from a cardiovascular point of view." (Dr. Gaeta report, February 11, 1991).
Dr. San Antonio offered a different view of Plaintiff's ability to work. He opined that Plaintiff's condition worsened after his return to work following bypass surgery. Dr. San Antonio stated:
 The development of chest pain following his bypass surgery certainly represented a worsening of his condition. Indeed, it was this deterioration in his condition which caused me to alter the opinion I had rendered approximately four (4) months earlier and to advise Mr. McKnight that he probably should not return to work as a police commander in light of the stressful nature of the occupation." (Dr. San Antonio report, June 5, 1995).
Dr. San Antonio reports that the electrocardiogram taken during the January, 1991 Kent County Hospital admission was different from that recorded in June, 1990, following the bypass surgery. He diagnosed post bypass angina. (Dr. San Antonio report, June 5, 1995).
The Board was not required to accept Dr. San Antonio's diagnosis. Where the opinion of one physician is contradicted by the opinion of another physician, the Board has the right to determine which of the opinions to accept and which to reject. In this case, the Board accepted the conclusions of Dr. Mancini and Gaeta and based its decision on their findings. Those opinions provided the Board with legally competent evidence on which they could and did rely on in finding that Plaintiff was not disabled.
Disability decisions in most cases turn upon "routine, standard, and unbiased medical reports by physician specialists." Matthews v. Eldridge, 424 U.S. 319, 344, 96 S.Ct. 893, 907 (1976). The Board's reliance on the opinions of Dr. Mancini and Dr. Gaeta and the Board's final decision were not clearly erroneous or arbitrary and capricious.
Finally, Plaintiff alleges that the Board failed to consider all of the evidence that he presented. Specifically, Plaintiff claims that the Board failed to read his legal brief. One Board member admitted that he had not read it carefully. (Board Executive Session record, March 10, 1998 at 14). As a result of this admission, Plaintiff argues that he was denied due process of law.
Plaintiff filed his brief on the date of the hearing to reply to a brief filed by Defendant one day earlier. At the February 10, 1998 hearing, Plaintiff had been granted permission to submit a reply brief. (February 10, 1998 Executive Session, at 2). It is unfortunate that Defendant failed to file its brief until the eleventh hour which delayed Plaintiff's opportunity to respond thereto. However, Plaintiff fails to point to any specific item of evidence which was contained in his brief that the Board did not consider nor does the Plaintiff point to any section of the brief that would have altered the Board's decision had they reviewed it carefully.
The Court has reviewed the subject reply brief. (Plaintiff's Reply Brief record, March 10, 1998). It does not contain additional evidence, but merely comments on the evidence previously submitted to the Board and includes legal argument in support of Plaintiff's position. Whereas parties are entitled to receive a full and fair hearing, the Court finds that Plaintiff was not denied due process regardless of whether one or more Board members failed to read his late filing carefully.
Due process requirements of a fair trial apply to the procedures of administrative agencies. Bourque v. Dettore, 589 A.2d 815, 823, (R.I. 1991). The hearing before the City of Warwick Board of Public Safety was administrative in nature and as a result, Plaintiff was entitled to an opportunity to be heard at a meaningful time and in a meaningful manner. Id. Due process requires that an applicant be afforded the opportunity to confront adverse witnesses and present evidence orally. Goldberg v. Kelly, 397 U.S. 254, 267, 90 S.Ct. 1011, 1020 (1970). Due process requires only the opportunity to be heard and the opportunity to present oral testimony. Bourque, 589 A.2d at 823. Plaintiff received both an opportunity to be heard and the opportunity to present oral testimony. The Board did not violate Plaintiff's due process rights.
 Conclusion
The Board's decision was based on legally competent evidence. The Board's decision was not arbitrary, capricious, or characterized by an abuse of discretion. The Plaintiff's appeal is denied.
Counsel shall submit the appropriate judgment for entry.