FLORENT J. MESSIER *et al. vs.* CITY COUNCIL OF THE CITY OF CENTRAL FALLS.

NOVEMBER 19, 1959.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

PAOLINO, J. This is a petition for a writ of certiorari to review the action of the city council of the city of Central Falls denying the petitioners' applications for permits to

erect a garage and to install gasoline storage tanks on land owned by them at the corner of Lonsdale avenue and Liberty street in that city.

It appears from the record that in compliance with the provisions of secs. 7-8 and 7-209 of the Revised Ordinances of 1955, petitioners filed an application with the building inspector for a permit to erect a "Class B garage" as defined in sec. 7-207 of the ordinances. The plans and specifications of the proposed building showing its location on said land were submitted with the application. These were approved by the building inspector and referred with his approval to the city council for its consideration. It is undisputed that the application was submitted in the manner prescribed by the pertinent ordinances and that the plans and specifications submitted therewith conformed to all the requirements thereof.

It also appears that, in compliance with sec. 10-20 of the ordinances, petitioners filed an application with the city council for a permit to install four 4,000-gallon gasoline storage tanks on the land in question. A copy of the plans, showing the location on the premises and the size, capacity and manner of construction of the proposed tanks, was also submitted. The application was referred to the chief of the fire department, and after examining the plans and inspecting the proposed location he approved the granting of the application insofar as fire safety was concerned. It was thereupon referred to the city council for consideration.

At the hearings before the city council, petitioners presented the testimony of the building inspector and the chief of the fire department. From their testimony it appears that the application for the building permit met all the requirements of the building ordinances, and the proposed plans for the installation of the tanks conformed to all the safety requirements of the pertinent ordinances.

Three remonstrants appeared in opposition to the granting of the permits. Their objections were based on aesthe-

tic considerations and on their claims that the granting of the permits would create traffic problems and would adversely affect surrounding property values. There is no evidence in the record that the proposed building was not in conformity with the building ordinances or that the method of installing the storage tanks was in any way unsafe.

Lonsdale avenue is a state highway. The petitioners' land is located on the easterly side thereof and on the southerly side of Liberty street. Another filling station is located north of the proposed location on the northerly side of Liberty street and on the easterly side of Lonsdale avenue. Although the area in question is predominantly residential, it also includes a number of business establishments.

The city council apparently treated both applications together as one application for a gasoline filling station permit. However, it is undisputed that there is no ordinance requiring a permit for the erection of a gasoline filling station as such. In any event, the council denied both applications without stating the reasons for such denial or the grounds on which its decisions were based.

It appears from the transcript of the hearing that those who voted against the granting of the permits did so to please some of their constituents and to restrict the number of gasoline filling stations in Central Falls. Other reasons given by the councilmen relate to aesthetic considerations and charges that gasoline filling stations create traffic problems, cause gasoline odors, and adversely affect the value of surrounding property.

Two questions are raised by the record before us. One relates to the application for a building permit to erect a garage. The other pertains to the application for a permit to install gasoline storage tanks. The petitioners contend that there is no evidence to support the action of the respondent on either application; that in denying the permits

the city council exceeded its jurisdiction; and that, therefore, such action was arbitrary and unlawful.

We shall first consider the validity of the denial of petitioners' application for a building permit to erect a "Class B garage" as defined in sec. 7-207 of the revised ordinances. The narrow issue presented by the instant record is whether, in the absence of a zoning ordinance, the city council has power under the existing ordinances to deny such permit for the reasons given by the councilmen who voted to deny the application.

After careful consideration it is our opinion that in the circumstances the council erred. There is no ordinance authorizing it to deny such a permit on the grounds of increased traffic hazards, adverse effects on surrounding property values, or for any of the other reasons given by the council. Having indisputably complied with all the requirements of the applicable city ordinances, petitioners were entitled to the permit in question. The denial thereof was therefore arbitrary and unlawful. *Tillotson* v. *City Council*, 61 R. I. 293; *MC. and S. Realty, Inc.* v. *City Council*, 88 R. I. 138, 144 A.2d 112.

There is no merit in respondent's contention that sec. 7-212 of the revised ordinances vests it with exclusive power and authority to grant or deny such permit. *Aldee Corp.* v. *Flynn*, 72 R. I. 199. That section provides in substance that the inspector and the city council may prescribe such rules and regulations as they may deem necessary or advisable for the equipment, care and manner of operation of Class B garages "in order to diminish the fire hazard, to provide for safety of life, the preservation of the public health and the security of property and the comfort of persons in the vicinity thereof."

Section 7-212 clearly vests the city council with power to regulate the operation of class B garages in order to accomplish the purposes of said ordinance. But the ordinance does not vest the city council with authority to prohibit

the erection or operation of such garages. Undoubtedly, under the ordinance the council has power to make reasonable regulations governing the operation of such garages, but permission to make reasonable use of one's land in conformity with reasonable regulations cannot arbitrarily be withheld. *MC. and S. Realty, Inc.* v. *City Council, supra.*

We shall next consider petitioners' contention that there is no evidence to support respondent's denial of their application for a permit to install the gasoline storage tanks. Section 10-20, under which such application was filed, was enacted by the city council by virtue of authority granted by general laws 1956, chapter 23-36. That chapter is entitled "Inspection And Handling Of Inflammable Substances."

The pertinent provisions of §23-36-1, "Ordinances regulating manufacture and handling of explosives and inflammables—License," vest a city or town council with power to make all ordinances and regulations which such council may deem necessary for the safety of its inhabitants from the handling of gasoline and other explosive and inflammable substances. Section 1 also authorizes a city or town council to prohibit the handling of such substances by persons within the respective city or town unless a license for the same shall be first obtained from the city or town council.

This statute clearly relates to dangers from fire and explosion inherent in such substances. It empowers the cities and towns to regulate and control the handling thereof in order to protect the safety of the inhabitants from such inherent dangers. Their safety is the standard prescribed by the statute to guide city and town councils in regulating the handling of these substances. Compliance with reasonable regulations providing for such safety entitles applicants to the license authorized by the statute. The statute also provides that such a license shall remain in force unless re-

voked for good and sufficient cause by the city or town council.

By virtue of the powers conferred by §23-36-1, the city council of Central Falls enacted chap. 10 of the revised ordinances of 1955 entitled "Fire Prevention." Section 10-20, "Gasoline, naphtha, benzine, etc.—Storage and possession generally," provides:

> "No person shall store, keep or have in possession for any purpose or use, in any building or place within the city, more than five gallons of naphtha, gasoline, benzine or other product of petroleum that will flash or inflame at a less temperature than one hundred ten degrees, Fahrenheit, unless such person shall have first filed with the city council a statement of the maximum quantity of the same to be kept, stored or had in possession, and of the place where and manner in which the same is to be kept, stored or had in possession by such person, and unless the council, with regard to the public safety, shall have first approved by vote the maximum quantity, place where and manner in which the same is to be stored, kept or had in possession."

A reading of the ordinance indicates clearly that the public safety which the council is authorized to adopt as a rule or standard in passing on such permits is safety from the dangers of fire and explosion from the storage and possession of the substances in question.

As already noted, the plans and specifications for the proposed installations indicate compliance with all the safety requirements of the pertinent ordinance. In fact the respondent has not stated the contrary. It based its denial on grounds related to aesthetic considerations, traffic problems, and possible deterioration of surrounding property values. The city council is not authorized, either by the enabling act or the pertinent ordinance, to deny petitioners' application on such grounds. The standard used by the council is not one authorized by law. Therefore it is arbitrary and unlawful and deprives petitioners of the lawful use of their property.

By virtue of the enabling act and the pertinent ordinance, the city council undoubtedly has the power to regulate, with relation to dangers to the public safety from fire or explosions, the maximum quantity, place where, and manner in which gasoline and other petroleum products are handled. However, the instant record does not support respondent's contention that its decision was based on the danger inherent in storing large quantities of explosive and flammable substances in the area in which petitioners' premises are located.

We do not agree with the contention that a gasoline filling station is a nuisance per se. See 66 C.J.S., Nuisances, §50, p. 803; 24 Am. Jur., Garages, Parking Stations, and Liveries, §6, p. 482; 124 A.L.R. 383. Nor do we agree with the contention that a gasoline filling station is a noxious trade within the meaning of G. L. 1956, chap. 23-24, entitled "Noxious Trades," or within the meaning of the ordinance pertaining to noxious trades. The record before us fails to disclose any lawful reason why the respondent should not have granted the petitioners' application under such reasonable conditions as it deemed necessary to comply with the standards set out in the statute and ordinance.

Therefore it is our opinion that the respondent in the circumstances here erred in denying the applications on the grounds stated by the council. *Aldee Corp.* v. *Flynn, supra.*

The petition for certiorari is granted, and the vote of the city council denying the applications is quashed. The record as thus quashed will leave the petitioners' applications pending before the city council to be considered by it de novo in accordance with this opinion.

*Shannahan & Cunningham, James M. Shannahan, Matthew C. Cunningham, Ernest J. Pratt,* for petitioners.

*Albert E. Tondreau,* City Solicitor, for respondent.