DECISION
The matter presently before this Court is plaintiffs' appeal from a July 21, 1995 decision of the City of Pawtucket Zoning Board of Review (Board). Jurisdiction in this Superior Court is pursuant to G.L. 1956 (1991 Reenactment) § 45-24-20.
I. Case and Travel
Plaintiffs Rudolph Holewa (Holewa) and Sadie Handrigan (Handrigan) are owners of the property in question. The property consists of one lot located on Pawtucket Tax Assessor's Plat 30, Lot No. 175, on Brookdale Boulevard in Pawtucket. This lot is located in a Residential single-family zone (RS).
Plaintiff David W. Satti, Inc. (Satti) entered into a purchase and sales agreement with Plaintiffs Holewa and Handrigan to construct a single-family dwelling on the property in question. The dimensions of the property in question are 50' by 90' for a total of 4,500 square feet. Under the Pawtucket Zoning Ordinance, the minimum total area for a lot is 5,000 square feet. Article 9-10(c)(1). Plaintiffs' application meets all other use and dimensional requirements, including setback requirements. As a result, plaintiffs have sought relief from the Pawtucket Zoning Ordinance's minimum lot area requirement.
An advertised public hearing was held May 30, 1995. At the hearing, David Satti and Anthony F. Varone (Varone), a real estate expert, testified on behalf of the plaintiffs. In summary, Varone stated that the application would not have an adverse effect on the surrounding property values and would be compatible to the area. Five neighbors testified in opposition to the granting of the petition because of the small size of the lot. The Board took judicial notice of an advisory opinion rendered by the Pawtucket Department of Planning and Redevelopment which favored the granting of the dimensional variance. Board's Decision at 2.
The Board, by a 2-3 vote, denied plaintiffs petition for a dimensional variance. In response, plaintiffs filed this appeal from said decision of the Board contending that the Board improperly considered the aesthetic impact of the proposed structure on the neighborhood.
II. Appellate Review of Zoning Board Decision
Pursuant to Rhode Island General Laws § 45-24-69(D), the Superior Court possesses appellate jurisdiction to review zoning board decisions. Section 45-24-69(D) provides in pertinent part:
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
R.I. Gen. Laws 1956 (1991 Reenactment) § 45-24-69 (D).
In reviewing a zoning board decision, the Superior Court may neither substitute its judgment for that of the zoning board nor examine the weight of the evidence. Rather, the court must examine the entire record to determine whether `substantial' evidence exists to support the board's findings. This requisite substantial evidence means more than a scintilla but less than a preponderance.
However, a zoning board's determinations of law are not binding on the reviewing court. See Gott v. Norberg,417 A.2d 1352, 1361 (R.I. 1980). Rather, "[q]uestions of law . . . may be reviewed to determine what the law is and its applicability to the facts." Carmody v. Rhode Island Conflict of Interest,
509 A.2d 452, 458 (R.I. 1986).
Applicants who seek relief before a zoning board of review have the burden of fulfilling the prerequisites to relief from the relevant zoning ordinance. DiIorio v. Zoning Board of Review,105 R.I. 357, 252 A.2d 350, 353 (1969). To decide whether an applicant sustained his or her burden of proof, it is necessary to ascertain the proper standard of proof with respect to relief sought. Gara Realty v. Zoning Board of Review, 523 A.2d 855, 857 (R.I. 1987).
III. The Decision of the Board
The plaintiffs contend that they presented sufficient evidence to satisfy the requirements for a dimensional variance and the Board's decision is arbitrary and constitutes an abuse of discretion. Specifically, the plaintiffs assert that the board acted in excess of statutory authority when it denied plaintiffs' request for a dimensional variance based solely on the aesthetic impact of the proposed structure.
The Board made the following findings regarding its decision to deny the granting of the plaintiffs' variance:
 "8. The majority of the Board finds that the developer has given little thought to the aesthetics of the building and that the submitted plans are of such poor workmanship that they should be rejected. The board believes that granting the dimensional variance and allowing the applicant to build a dwelling, consistent with the proposed construction plans, would alter the general characteristics of the structure area because of the proposed design of the "shot gun" ranch house.
 9. The Board also finds that granting a dimensional variance in this instance would impair the intent and purpose of the Zoning Ordinance as stated in various provisions therein:
 (a) Article 9-10 (C) (1) (b) of the Pawtucket zoning ordinance entitled Standards for Relief for a Variance states that `in granting a variance, the Board shall require that evidence to the satisfaction of the following standards be entered into the record of proceedings: that said hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain.' The majority of the Board finds that neither the current owner of the property nor the applicant has met the burden of proving an adverse impact amounting to more than a mere inconvenience. The majority of the Board finds that it is clear from the testimony that, as soon as constructed, the house will be sold by the applicant for profit. Moreover, the current property owners have no intention of using the proposed dwelling as their residence. Therefore, any hardship suffered by the applicants will be solely financial hardship, and the aforementioned zoning provision clearly indicates that hardship does not result `from the desire of the applicant to realize greater financial gain.'
 (b) Article 9-10(D) of the Pawtucket zoning ordinance entitled Special Conditions states that `in granting a variance or special use permit or in making any determination upon which it is required to pass after public hearing under this ordinance, the board may apply such special conditions that may, in the opinion of the board, be required to promote the intent and purposes of the comprehensive plan of the city and this ordinance . . .' The Board finds that this may include, but is not limited to `provisions minimizing adverse impact of the development upon other land, including the type, intensity, design, and performance of activities . . .' During the course of the hearing, the applicant rejected the Board's suggestion of improving the design of the dwelling thereby eliminating the Board's ability to impose special conditions.
 10. The board concludes by stating that the strong negative response of the neighboring residents cannot be ignored. The Board finds that because of the proposed structure's negative aesthetic impact on the area, the applicant's request for a dimensional variance must be denied. The fact that a permitted use may be more profitable or that a structure may be more valuable after a Dimensional Variance is granted shall not be grounds for relief."
Board's Decision at 2-3.
Although the Board makes no mention of the merger doctrine in its decision and does not rely on it when denying plaintiffs application for a variance, the Board in its memorandum of law in support of its decision raises the contention that a dimensional area variance may not be granted to solve the problem of an applicant who wishes to subdivide a lot to create both a standard lot and a substandard lot. See Rozes v. Smith, 120 R.I. 515,388 A.2d 816 (1978).
Holewa and Handrigan own two adjacent lots, lot 176 and the lot in question. The lots were merged as a matter of law pursuant to the merger doctrine. G.L. 1956 (1991 Reenactment) § 45-24-38
requires that every city or town "shall regulate the use or uses of . . . contiguous lots of record . . ." Article 6-6 (C) of the Pawtucket Zoning Ordinance regulates the merger of substandard lots. Article 6-6 (C) provides that:
 "(C) Merger of substandard lots
 If two or more lots of record or combinations of lots of record are in single or undivided ownership at the time of the adoption of this ordinance or future amendment, and if all or part of such lots of record do not conform to the regulations for street frontage or are in effect for the zone involved, such lots of record shall be considered as a single lot for the purpose of this ordinance. No such lot shall be divided for use, sale, or other transfer of ownership without City Planning Commission approval.
 However, any merged lot in the RS, RT and RM district may be subdivided with the City Planning Commission approval into as many 5,000 square foot lots as possible, and if one lot remains of at least 3,200 square feet, it may be created. . . ."
This Court's task in construing any ordinance is to effectuate and establish the intent of the Legislature. In ReAdvisory Opinion to the Governor, 504 A.2d 456, 459 (R.I. 1986). When the language of a statute is unambiguous and expresses a clear and sensible meaning, there is no room for statutory construction or extension, and this Court must give the words of the statute their plain and ordinary meaning. Id.
Given these principles of statutory construction, this Court finds that the ordinance by its plain and ordinary meaning allows plaintiffs to subdivide their merged lots. The ordinance provides that a merged lot may be subdivided if only one lot remains that is substandard, this substandard lot being greater than 3,200 square feet, and approval of the City's Planning Commission is obtained.
In the instant matter, plaintiffs have conformed with the guidelines promulgated by the Pawtucket Zoning Ordinance. Holewa and Handrigan received approval from the City's Planning Commission to subdivide the merged lots into two lots, one being 5,000 square feet and the other being the lot in question consisting of 4,500 square feet. The Pawtucket Zoning Ordinance expressly provides for this situation. Even though the lot in question is a substandard lot, it is greater than the minimum 3,200 square feet laid out in the ordinance. As plaintiffs' requested relief is allowed under the Pawtucket zoning ordinance, the Board has no authority to deny plaintiffs' petition based upon their subdivision of property.
The plaintiffs have sought a deviation from the regulation of a permitted use. Although the ordinance permits the erection of a single-family dwelling, this use is conditioned upon the plaintiffs satisfying the dimensional regulation regarding minimum lot area requirement. As such, the plaintiffs correctly sought a Viti variance and the Board correctly applied the Viti
variance standard. Viti v. Zoning Board of Review, 92 R.I. 59, 65, 166 A.2d 211, 213-14 (1963).
In Viti, the Rhode Island Supreme Court recognized that an owner is entitled to relief from the literal enforcement of zoning regulations when such enforcement would preclude the full enjoyment of a permitted use. In doing so, the Court stated that an applicant for a deviation must show that enforcement of the ordinance amounts to something more than a mere inconvenience. The test to determine if this standard is met "is whether a literal enforcement thereof would have an effect so adverse as to preclude the full enjoyment of the permitted use." Westminster v.Zoning Board of Providence, 103 R.I. 381, 238 A.2d 353, 387 (1968).
The Board, in part, denied plaintiffs' petition because they are seeking to make a profit from the sale of the house upon completion and therefore do not satisfy the more than a mere inconvenience test. The Zoning Enabling Act of 1991 states that neither "economic disability" nor a desire to "realize greater financial gain" is a valid consideration in the granting of any variance. § 45-24-41 (C) (1), (2). Financial considerations falling short of confiscatory effect do not warrant the granting of a use variance. Vican v. Zoning Board of Review, 103 R.I. 429,238 A.2d 365 (1968). A "use" in this context means some use of the land by the owner that is not so insubstantial as to be confiscatory. Kent County Land Co. v. Zoning Bd. of Review ofWarwick, 100 R.I. 418, 216 A.2d 511 (1966). Thus, the opportunity to sell the land does not constitute a "use" precluding confiscation by a zoning ordinance that does not allow any other use. Id. (fact that applicant had an offer from objector to purchase lot did not preclude grant of use variance). See Chase,Rhode Island Zoning Handbook, § 132 (1993).
In the matter before this Court, the plaintiffs are seeking a variance under the less stringent more than a mere inconvenience test. The plaintiffs presented to the Board uncontroverted evidence that they would be denied all beneficial use of their property if the requested variance was not granted. The Pawtucket Zoning Ordinance restricts the use of said property to the construction of a single-family house. The plaintiffs' proposed use of the property is to construct a single-family house. The only other option is for the plaintiffs not to utilize the property in any fashion. Accordingly, the denial of the proposed use amounts to more than a mere inconvenience upon the plaintiffs.
The Board additionally found that the plaintiffs' petition should be denied based on the negative aesthetic impact on the neighborhood. The State's power to interfere with the general rights of a landowner by restricting the character of his or her use is not unlimited, and any restriction upon his or her use cannot be imposed unless it bears a "substantial relation to the public health, safety, morals, or general welfare." Bourque v.Dettore, 589 A.2d 815, 820 (R.I. 1991) (quoting Washington exrel. Seattle Title Trust Co. v. Roberge, 278 U.S. 116, 121, 49 S.Ct. 50, 51-52, 73 L.Ed.2d 210, 213 (1928)). Thus the validity of a legislative delegation often hinges on the relation of the contested statute or ordinance to matters properly the subject of the state or municipal regulation under police power. Bourque,
589 A.2d at 820. Consequently, land use restrictions must find their justification in the police power exerted in the interest of the public and must not impose unnecessary or unreasonable restrictions upon the use of private property. Id.
Aesthetics is a legitimate goal of zoning within the realm of public welfare, but it is not sufficient to exclude a permissible use of property when it is the sole reason for exclusion. Diller Fisher Co. v. Architectural Review Bd., 246 NJ Super 362,587 A.2d 674 (1990); Art Van Furniture, Inc. v. Kentwood,175 Mich. App. 343, 437 N.W.2d 380 (1989). Denial of an application for reasons related to aesthetic considerations, even if complied with safety requirements, is not within the Board's authority. Messier v. City Council of theCity of Central Falls, 90 R.I. 127, 133,155 A.2d 609, 612 (1959).
Insufficient substantial evidence exists in the entire record to support the Board's denial of a dimensional variance. Finding that the proposed structure would have a "negative aesthetic impact" is itself a value judgment and without significance.Staller v. Zoning Board of Cranston, 100 R.I. 340, 344,215 A.2d 418, 421 (1965). Although the proposed structure may be aesthetically unique, the record reveals no adverse impact beyond appearance.
In the case at bar, the Board stated that the members of the board made an inspection of the property in question and of the surrounding property and neighborhood. The Rhode Island Supreme Court has stated that when a board of review is acting on an application for a variance, it may base its findings on knowledge obtained during an inspection of the premises. Coderre v. ZoningBoard of Review of the City of Pawtucket, 105 R.I. 266,251 A.2d 397 (1969). The Court has also stated that bare statements that the board viewed the property and neighborhood but was silent as to what it saw is not enough to provide legal evidence sufficient to back its decision. Buckminster v. Zoning Board, 68 R.I. 516,30 A.2d 104 (1943). In the case presently before this Court, the Board makes no assertions in its decision or on the record that the proposed property they reviewed will have an adverse effect on the neighborhood other than the negative aesthetical impact.
After a thorough review of the entire record, this Court finds the Board's decision was arbitrary and capricious. InCitizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823-24, 28 L.Ed.2d 136, 153 (1971), the United States Supreme Court stated that to make a finding of arbitrariness, capriciousness or an abuse of discretion, "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." In the instant case, the Board's decision denying the application for a variance constituted an abuse of discretion since it was attributed essentially to aesthetic considerations and was not based on substantial evidence of the whole record in support of the findings.
This Court finds that the decision of the Board is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record and that substantial rights of the appellants have been thereby prejudiced. Accordingly, for the reasons hereinabove set out, the decision of the Board is reversed, and the plaintiffs' application for a dimensional variance is hereby granted.
Counsel shall submit the appropriate judgment for entry.